UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF TEXAS and GREG ABBOTT, in his official capacity as Governor of the State of Texas,<br><br>Defendants. | Case No.   3:21-cv-173 |

DECLARATION OF JALLYN SUALOG,
DEPUTY DIRECTOR, OFFICE OF REFUGEE RESETTLEMENT,
U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES

I, Jallyn N. Sualog, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1.  I am the Deputy Director of the Office of Refugee Resettlement ("ORR"), an Office within the Administration for Children and Families ("ACF"), U.S. Department of Health and Human Services ("HHS").

2.  I have held the position of Deputy Director since June 2018. I was previously the Director of Children's Services from September 2013 through June 2018. I have worked at ORR since February 2007. I have a Master of Arts in Clinical Psychology. Before joining ORR, I worked as a mental health professional and managed the child welfare and social services programs for Hawaii's largest non-profit organization.

3.  As the Deputy Director of ORR, I have responsibility for all aspects of the Unaccompanied Children (UC) Program, including all policy, operations, planning and logistics,

1

medical services, and monitoring. My job duties include coordinating the care and placement of UC and overseeing ORR's nation-wide network of grantee child-care providers, including the transportation of UC to, between, and from ORR facilities throughout the country.

4. My testimony in this declaration is based upon my personal knowledge of the organization and operation of ORR's network of grantee care-providers and information obtained from records and systems maintained by ORR in the regular course of my employment. I am familiar with the allegations in this matter, and submit this declaration in order to describe the immediate and irreparable harm ORR will suffer as a result of Governor Abbott's Executive Order No. GA-37 "Relating to the transportation of migrants during the COVID-19 disaster."

5. ORR is the agency charged by Congress with the care and custody of UC.  The UC population includes refugee minors, tender-age children, pregnant and parenting teens, and youth who have been trafficked.  Within ORR, the UC Program is responsible for the administration of a network of facilities throughout the country that care for UC arriving in the United States prior to those children being placed with sponsors in the United States, typically a parent or related adult.  ORR is not responsible for immigration enforcement and is not a federal law enforcement agency—ORR is a federal child welfare agency.

6. ORR does not directly operate any child-care facilities itself, but rather provides grants to child-care providers throughout the United States, who care for UC on ORR's behalf pursuant to a cooperative agreement with ORR.  As of July 2021, ORR oversees over 200 grantee facilities under approximately 50 separate grants. Within Texas, there are 52 care-provider facilities operating under various grants.  In addition to these grantee care-provider facilities, ORR also operates two Emergency Intake Sites (EIS) in Texas, which are emergency facilities that were set-up to decompress overcrowded U.S. Customs and Border Protection (CBP) facilities during

the current surge. EIS facilities minimize the time UC must spend in CBP custody and provide basic care to UC while they await release to a sponsor or transfer to a licensed ORR shelter.

7.  Currently, there are approximately 8,632 UC in ORR's care and custody in Texas. ORR receives approximately 500 referrals a day from CBP, with a significant percentage of these UC arriving across Texas's Southern border.

8.  On July 29, 2021, Texas Governor Greg Abbott issued Emergency Order No. GA-37, which states in relevant part, (i) "No person, other than a federal, state or local law-enforcement official, shall provide ground transportation to a group of migrants who have been detained by CBP for crossing the border illegally or who would have been subject to expulsion under the Title 42 order"; (ii) "The Texas Department of Public Safety (DPS) is directed to stop any vehicle upon reasonable suspicion of a violation of paragraph 1, and to reroute such vehicle back to its point of origin or a port of entry if a violation is confirmed"; and (iii) "DPS is authorized to impound a vehicle that is being used to transport migrants in violation of paragraph 1, or that refuses to be rerouted in violation of paragraph 2."

9.  As described below, the Executive Order's prohibition on the ground transportation of non-citizens in Texas by anyone other than federal, state, or local law enforcement will paralyze ORR's operations in three key respects.

10.  ***First***, the Department of Homeland Security's contractors will be prevented from transferring UC they encounter in Texas to ORR. The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) generally requires that UC be transferred to ORR custody within 72 hours after being determined to be a UC. ORR receives all UC in its custody from either CBP or Immigration and Customs Enforcement (ICE), both of whom rely on contractors to transport UC encountered in Texas to ORR's grantee care-providers. ORR assumes

custody of UC when they are brought to an ORR facility. The vast majority of UC arrive at ORR's facilities on buses or vans operated by CBP and ICE contractors. Thus, if the Executive Order prohibits the ground transport of UC by federal contractors that would directly impede CBP and ICE's ability to transfer UC to ORR in a timely fashion as required by the TVPRA.

  11.  ***Second***, ORR will be prevented from transporting UC in Texas between facilities within the ORR network. Once UC have entered ORR's care and custody, ORR may need to transfer UC between facilities for a variety of reasons. For instance, a minor may require an immediate transfer from one of ORR's EIS facilities to a grantee care provider within ORR's network due to medical issues such as pregnancy or a newly identified disability, vulnerability (e.g., trafficking concerns), or safety concerns for self and others. In addition, ORR endeavors to transfer UC whose release is expected to take longer than average from EIS facilities to grantee facilities. ORR coordinates planned transfers of anticipated long-stayers (i.e., Category 3 and 4 UC[1]) from EIS to licensed shelters two or three times a week. ORR is also in the process of winding down some EIS sites, which will require the transfer of UC to other facilities. All of these transfers occur routinely in Texas and require ORR's grantees and transportation contractors to transport UC either between facilities located in Texas or from facilities located in Texas to facilities located

---

[1] *See* ORR Policy Guide § 2.2.1, which defines the various categories of UC based on prospective sponsor:

- Category 1: Parent or legal guardian. (This includes qualifying step-parents that have legal or joint custody of the child or teen).
- Category 2A: An immediate relative—brother; sister; grandparent or other close relative (aunt, uncle, first cousin) who previously served as the UAC's primary caregiver. (This includes biological relatives, relatives through legal marriage, and half-siblings).
- Category 2B: An immediate relative—including aunt, uncle, or first cousin who was not previously the UAC's primary caregiver. (This includes biological relatives, relatives through legal marriage).
- Category 3: Other sponsor, such as distant relatives and unrelated adult individuals.
- Category 4: No sponsors identified.

in other states (and vice versa).[2]  In any event, ORR's grantees and transportation contractors will need to utilize ground transportation in Texas to accomplish these transfers.

12. ***Third***, ORR will be prevented from uniting UC with sponsors in Texas.  After ORR has identified and vetted a sponsor for a particular UC, that UC must be transported to the sponsor.  When a UC or sponsor is located in Texas, ORR's grantees or transportation contractors must travel through Texas with the UC in order to effectuate the release.  The inability to use ground transportation in Texas will prevent ORR from reuniting UC and sponsors, whenever either party is located in Texas.  The inability to release UC to sponsors not only denies UC the care and companionship of their sponsors, who are typically family members, but it also keeps UC in ORR custody longer, which prevents ORR from accepting new referrals from CBP by decreasing the available bed-space in ORR's facilities.

13. At bottom, to fulfill its statutory responsibility to care for and place UC, ORR and its sister agencies must be able to freely transport UC within Texas, where a large number of non-citizens enter the country, a large number of ORR facilities are located, and a large number of releases take place.  The majority of all UC movements are conducted by ground transportation, including a significant amount of ground transportation in Texas.  The inability to transport UC at any stage of the process will result in immediate back-ups either at CBP or ORR facilities, and increased density in these facilities will endanger UC and facility personnel by increasing the risk of COVID-19 transmission.  The inability to transport UC also will prevent UC from being transferred into ORR custody, placed in the most appropriate facility, and released to their sponsors.

---

[2] ORR's grantees and transportation contractors also utilize ground transportation to travel to and from Texas airports when transporting UC interstate.

Executed on July 30, 2021.

                                                      Jallyn N. Sualog -S

                                                      Jallyn N. Sualog

*Digitally signed by Jallyn N. Sualog -S*
*Date: 2021.07.30 11:56:31 -04'00'*