UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF TEXAS and GREG ABBOTT, in his official capacity as Governor of the State of Texas,<br><br>Defendants. | Case No. 3:21-cv-173-KC |

**JOINT MOTION FOR CLARIFICATION REGARDING AUGUST 13 HEARING**

The parties, through undersigned counsel, have conferred concerning the Court's August 3, 2021, Order, which ordered the parties to appear on August 13, 2021, at 8:00 a.m., for a hearing on Plaintiff's application for a preliminary injunction. ECF No. 18. The parties disagree about what evidence the parties are allowed to submit and require intervention by the Court to resolve the dispute. Specifically, the parties disagree whether the Court's order precludes the Defendant, State of Texas, from presenting live witness testimony at the hearing, and if so, what restrictions apply to the presentation of such testimony, and whether the parties must produce their respective declarants for cross examination. The parties conferred about this issue on Friday, August 6, 2021, but were unable to reach any agreement on anything other than presenting this joint request to the Court. The parties are available to participate in a telephonic status conference today should the Court find that such a conference would be helpful. Below are the parties' respective positions:

**Plaintiff the United States' Position:**

The United States does not believe that an evidentiary hearing is necessary to resolve its motion for a preliminary injunction and therefore submits the August 13 hearing should be limited

to oral argument on the motion. It is well-established that a motion for a preliminary injunction can be resolved on the basis of written declarations, without live testimony. As the Fifth Circuit has explained, "[i]t long has been true that parties can present evidence at the preliminary-injunction stage with declarations or affidavits." *Valentine v. Collier*, 956 F.3d 797, 808 n.1 (5th Cir. 2020) ("The district court made much of the fact that [defendants] did not present 'live testimony' at the preliminary-injunction hearing. It's unclear to us why that matters."). "Furthermore, at the preliminary injunction stage . . . the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993). "Thus, the district court can accept evidence in the form of . . . affidavits." *Id.*; *see also Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817, 827 (W.D. Tex. 2001) ("Evidence at a hearing on a preliminary injunction need not be 'testimonial' and affidavits can be considered by the Court.").

Federal Rule of Civil Procedure 65(a)(1) does not require an evidentiary hearing except in circumstances inapplicable here. That rule provides that "[n]o preliminary injunction shall be issued without notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The Fifth Circuit "ha[s] interpreted the notice requirement of Rule 65(a)(1) to mean that 'where factual disputes are presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted.'" *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996); *see also Com. Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 341 (5th Cir. 1984) (same). But "[i]f no factual dispute is involved . . . no oral hearing is required[.]" *Kaepa*, 76 F.3d at 628. "[U]nder such circumstances the parties need only be given 'ample opportunity to present their respective views of the legal issues involved.'" *Id.*; *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998) ("where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing") (collecting Courts of Appeals cases). In other words, "[t]he basic question on the need for a hearing is whether it will add anything material to the Court's consideration of the case." *Healthpoint*, 273 F. Supp. 2d at 827.

Here, the United States' preliminary injunction motion turns almost entirely on legal questions arising under the Supremacy Clause of the Constitution in light of the broad, uncontested reach of the executive order to federal immigration operations in Texas.  There is no genuine dispute about the key factual predicate to the United States' entitlement to a preliminary injunction—that the federal government uses a variety of non-law enforcement officers, contractors, grantees and nongovernmental organization (NGO) partners to move groups of migrants as part of its immigration operations.  Each of the three declarations the United States submitted in support of it motion provided details of the respective federal agency's operations and the reliance of such operations on non-federal law enforcement officers, contractors, grantees, and NGO partners for the movement of migrants.  *See* ECF Nos. 3-1, 3-2, 3-3.  Texas did not dispute these key facts or otherwise mention these declarations in its opposition, much less submit evidence raising a dispute of fact about the declarants' descriptions of their own agencies' operations.

Moreover, Texas has had an opportunity to respond to the United States' declarations by submitting its own evidence, including documents and a declaration from Mr. Steven McCraw of the Texas Department of Public Safety (DPS). ECF No. 13, Ex. 5.[1]  But Mr. McCraw's declaration states merely that the Texas executive order "does not apply to 'a federal, state, or local law-enforcement official,'" *id.* ¶ 19—thus effectively conceding its application to *other* government officials, contractors, and grantees.  There is thus no basis to hold an evidentiary hearing just so that Texas can cross-examine the undisputed testimony of the United States' witnesses regarding the use of non-law enforcement federal employees, contractors, and grantees.

Texas's suggestion now that it needs to probe the existence, and terms, of the federal government's agreements with its grantees is at best immaterial and at worst a fishing expedition.  The United States' obstacle preemption argument does not depend on the existence of such agreements because the relevant question is not *whom* the state law regulates, but rather, against *what activity*

---

[1] Although Texas's response time was compressed, that was due to the emergency created by Texas's own decision to make its executive order "effective immediately," ECF No. 13, Ex. 1, thus requiring the United States to file suit within 48 hours of first learning of the executive order and seek emergency relief.

it regulates.  *See* ECF No. 17 at 3-4 (explaining that conflict preemption applies even where law regulates private parties).  The United States' obstacle preemption argument alone would support a preliminary injunction against the executive order in all its applications.  Moreover, discovery relating to federal grantees is not necessary even for the United States' separate intergovernmental immunity argument at this stage.  There is no dispute that the Texas executive order directly regulates federal non-law enforcement officials and contractors.  A preliminary injunction based on intergovernmental immunity could extend to them as well as to any grantees under agreements with the United States, without naming any specific grantees.  Discovery on that issue could proceed, to the extent necessary, as the parties prepare for summary judgment.

There is also no need to hold a live evidentiary hearing in order to allow Texas to present additional evidence in support of its opposition to the United States' motion.  The declaration of Mr. McCraw indicates that the Texas DPS has not yet issued "procedures to govern enforcement of the order" but that it intends to do so by August 9.  *See* ECF No. 13, Ex. 5, ¶¶ 15-16 & 21.  The McCraw declaration also notes that enforcement of the executive order will begin "only after the [anticipated procedures] are finalized and approved."  *Id.* ¶ 16.  The United States has not disputed these facts; there is no need for an evidentiary hearing to further establish them.  At the August 2 hearing, Texas referred to anecdotal reports of migrants being released after testing positive for COVID-19 and invoked a supposed public health interest in support of the executive order.  But as the United States explained in its reply brief, "the intention behind the executive order is wholly irrelevant" to the preemption analysis.  ECF No. 17 at 4.  No amount of testimony about Texas's alleged concerns regarding COVID-19 will bear on the issues central to the United States' motion, particularly when the plain terms of the executive order are strikingly both over- and under-inclusive, *id.* at 11-12.

In any event, although the United States objects to the presentation of live witness testimony (particularly if such testimony goes beyond the substance of the single declaration submitted by Texas in opposition—namely Mr. McCraw 's declaration, ECF No. 13, Ex. 5), the United States has no objection to Texas supplementing its opposition with additional declarations, provided that

4

such declarations are submitted by no later than Tuesday, August 10, so that the United States would have an opportunity to prepare a response. The United States believes that this process would avoid unfair surprises and allow a streamlined presentation of any additional evidence, which ultimately would assist in the Court's resolution of the United States' pending motion for preliminary injunction. *Cf. Marshall Durbin Farms, Inc. v. Nat'l Farmers Org., Inc.*, 446 F.2d 353, 356 (5th Cir. 1971) (court should avoid unfair surprise when deciding a motion for preliminary motion).[2]

In sum, there is no need for the presentation of live witness testimony at the August 13 hearing, and Texas is not entitled to cross examine any of the United States' declarants. *See Stanley v. Univ. of S. California*, 13 F.3d 1313, 1326 (9th Cir. 1994) ("[T]he refusal to hear oral testimony at a preliminary injunction hearing is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter."). Accordingly, the United States respectfully submits that the August 13 hearing should be devoted to oral argument on the pending motion for a preliminary injunction.[3]

**Defendants' Position:**

Texas disputes the United States' suggestion that it is not entitled to examine any of the United States' declarants and must instead simply accept their factual declarations without exam-

---

[2] The United States' fourth declaration, from the Assistant Secretary for Border and Immigration Policy at the Department of Homeland Security (DHS), ECF No. 17-1, was submitted in response to certain of Texas's factual assertions regarding COVID-19. The six-paragraph declaration generally describes DHS's system to facilitate testing, isolation, and quarantine of those individuals encountered at the border who are not immediately expelled pursuant the Centers for Disease Control and Prevention's Title 42 order. *See* ECF No. 17-1. The declaration does not go to the central legal question of whether the challenged executive order is preempted by federal law. Nevertheless, to the extent Texas believes that it did not have an opportunity to respond to the substance of this declaration submitted with the United States' reply brief, the United States has no objection to Texas filing a responsive declaration by August 10, 2021, so that the United States would have an opportunity to prepare a response.

[3] If the Court concludes that an evidentiary hearing is appropriate, the United States suggests that the Court extend the TRO until August 23 and hold the evidentiary hearing on that day.

ination. Further, Texas disagrees with any contention that it is somehow prohibited from introducing additional evidence at the preliminary injunction hearing. Texas intends to present testimony and cross-examine several of the United States' four witnesses at that hearing. The United States' position that a single weekend—the time that elapsed from the Court's setting of the TRO hearing until the hearing itself—was sufficient time for Texas to assemble the evidence necessary to defend itself at the preliminary-injunction hearing is risible. And its back-up position, that Texas should be required to submit defensive declarations without access to the probative evidence that is uniquely within the United States' control, fares no better. Whether through live or deposition testimony, both fundamental fairness and the Court's obligation to ensure that it has considered and tested all relevant information before rendering a decision militate in favor of permitting an evidentiary hearing.

Presenting live testimony at a preliminary injunction hearing is not a novelty. Rule 65(a)(1) requires more than mere notice of the date and time of the injunction hearing; it requires that Texas have a fair and meaningful opportunity to present its case—its version of the facts. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 342 (5th Cir. 1984)). Courts have long recognized that where disputed facts exist, it is for the district court to make factual and credibility determinations as necessary to adjudicate a preliminary-injunction motion. *See Pro-Life Miss .v. Horton*, 628 F. Appx. 269, 270 (5th Cir. 2016). Indeed, the purpose of a preliminary-injunction hearing is to permit the Court to evaluate differing versions of the facts. *See Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 812 n.4 (5th Cir. 1989); *Commerce Park*, 729 F.2d at 341. Here, that means providing Texas "an effective opportunity to controvert the facts adduced in support" of the United States' motion. *Marshall Durbin Farms v. Natl. Farmers Org.*, 446 F.2d 353, 356 (5th Cir. 1971). Granting the United States' preliminary injunction application without providing Texas such an opportunity to marshal facts in their defense is an abuse of discretion. *Id.* at 356–357.

Contrary to the United States' contention, facts are in dispute, and what's more, the United States controls much of the evidence that will help demonstrate that a preliminary injunction is

unwarranted. For example, as the Court recognized at the TRO hearing, one question in this case is the scope of GA-37—whether it extends to grantees, volunteers, and other private entities. Transcript, ECF No. 22, at 11:3–14:4. The United States argues that at least some grantees might be entitled to derivative intergovernmental immunity if a grant contract exists. *Id.* at 11:10–22. But the existence of those contracts, and their terms, are solely under the United States' control.

Similarly, the United States has claimed that its contractors, grantees, and "partners" are assisting with its efforts to stem the spread of COVID-19 through, in part, testing and quarantine procedures. *See, e.g.*, ECF No. 3 at 2, 18; ECF No. 17-1 at ¶ 5. But all of the information related to those efforts is, again, solely within the United States' control. For example:

- The Chief Border Patrol Agent of the Rio Grande Sector attests that one facility in his sector releases "an average of 500–1,000 migrants to depart government custody" into the care of "nongovernment organizations," but states neither the timetable over which that many aliens are released, nor the NGOs to which they are released, nor the procedures that the NGOs must follow once they take custody of the aliens, nor how (or whether) the United States determines that the NGO is meeting those obligations. ECF No. 3-1 at ¶ 9.

- DHS's Assistant Secretary for Border and Immigration Policy states that released aliens are "*generally* provided testing either prior to *or immediately after release*." ECF No. 17.1 at 5 (emphasis added). That is, the United States might determine whether an alien is carrying the COVID-19 virus only *after* it has yielded control over the alien's location—and because the testing occurs only "generally," there are instances, according to the United States, when the testing does not happen *at all.*

- The Chief Border Patrol Agent of the Rio Grande Sector attests that in fiscal year 2021, his sector had released roughly 107,000 illegal aliens. ECF No. 3-1 at ¶ 13. But he does not state how many of them were tested for COVID or what happened to the releasees who tested positive for COVID. Nor does he state whether any of the nearly 34,000 aliens who were transferred to ICE's Enforcement and Removal Operations were later released from the United States' custody, nor what happened to the roughly 16,000 aliens who were released who were neither transferred to ICE nor qualified as unaccompanied children. *Id.* ¶ 14.

At bottom, GA-37 is a public-health measure—an exercise of Texas's police powers intended to stop the spread of a virus that has caused a nationwide public-health emergency since last March. Texas is entitled to meet the United States' allegations and evidence by marshaling evidence to support its defenses and challenge those allegations. Where, as here, a district court is

confronted with "affidavits [that] relate to controverted factual issues" the court should "require[] the facts to be tested in the crucible of oral and cross-examination." *Scott v. Davis*, 404 F.2d 1373, 1375 (5th Cir. 1968) (vacating denial of preliminary injunction and remanding for evidentiary hearing). Indeed, "if the hearing is to serve its intended purpose of illuminating and resolving factual issues, it must be conducted fairly. The opposing party must be afforded the opportunity to cross-examine the moving party's witnesses and to present evidence." *Visual Scis., Inc. v. Integrated Communs., Inc.*, 660 F.2d 56, 58 (2d Cir. 1981) (reversing preliminary injunction); *see also U.S. v. Gila Valley Irrig. Dist.*, 31 F.3d 1428, 1442–43 (9th Cir. 1994) (reversing portion of preliminary injunction on which district court deferred accepting evidence until trial).

Even if the Court finds an injunction to be appropriate, it will still need to consider the facts that the United States believes to be irrelevant. An injunction must be narrowly tailored to achieve its goals and must state an enjoined party's obligations specifically. *Scott v. Schedler*, 826 F.3d 207, 211–212 (5th Cir. 2106) (reversing injunction that did not specify which policies and procedures party was supposed to continue enforcing). This narrow tailoring requirement is all the more important here, where Texas is attempting to protect its citizens from the spread of a contagious and deadly virus. As already discussed, without knowing the terms of the contracts or grants or the obligations of the United States' "partners," the Court cannot determine whether an injunction should extend to their operations. And without knowing the identities of those contractors, grantees, or "partners," Texas would not know whether enforcing GA-37 against an admittedly covered vehicle, such as a bus, would violate the terms of an injunction that forbade enforcement against such entities.

Because this case depends on contested facts, the Court should allow those contested facts to be unearthed and examined in full before rendering its decision.

Date: August 9, 2021

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

/s/ *Jean Lin*
JEAN LIN (NY 4074530)
Special Litigation Counsel
JOSHUA M. KOLSKY
ZACHARY A. AVALLONE
STEPHEN EHRLICH
MICHAEL J. GERARDI
ANTONIA KONKOLY
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel: (202) 514-3716
Fax: (202) 616-8470
E-mail: jean.lin@usdoj.gov

**COUNSEL FOR PLAINTIFF**

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JUDD E. STONE II
Solicitor General
Tex. State Bar No. 24076720

/s/ *Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Atty. General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
judd.stone@oag.texas.gov
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served on the other parties to this action and their counsel of record through electronic filing in the Court's ECF system on August 9, 2021.

/s/ *Jean Lin*
JEAN LIN