**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 3:21-cv-173-KC |
| v. | § | |
| | § | |
| THE STATE OF TEXAS; GREG ABBOTT, in | § | |
| his official capacity as Governor of Texas, | § | |
| | § | |
| Defendants. | § | |

# Hearing on Motion for Preliminary Injunction
# August 13, 2021

# Defendants' Presentation



KEN PAXTON
ATTORNEY GENERAL *of* TEXAS

# *United States v. Texas*

## U.S. District Court for the Western District of Texas, El Paso Division

## No. 3:21-cv-173-KC



# GA-37

- Executive order issued under Governor's emergency powers

- Key Provision (§ 1):

No person, other than a federal, state, or local law-enforcement official, shall provide ground transportation to a group of migrants who have been detained by CBP for crossing the border illegally or who would have been subject to expulsion under the Title 42 order.

- Ex. D-1



# GA-37

Enforcement

- DPS is tasked with enforcement
  - Ex. D-1; ECF No. 13, Ex. 5 ¶ 14
- "Prior to enforcing the provisions of GA-37, DPS intends to draft procedures to govern enforcement of the order."
  - ECF No. 13, Ex. 5 ¶ 15
- DPS has not yet issued procedures governing enforcement



# GA-37

Migration is fueling the pandemic in South Texas

- "Refugees and Asylees" as well as "Unauthorized Immigrants" are particularly vulnerable to COVID-19

  - Ex. D-6 at 14–18

- "The virus also has a uniquely high rate of transmission among [the migrant] population because of the health problems that often arise from the migratory journey."

  - Ex. D-2 ¶ 9



# GA-37

Migration is fueling the pandemic in South Texas

- "[V]accination rates are lower in the countries that newly admitted migrants come from and pass through."
  - Ex. D-1; *see also* Ex. D-2 ¶ 7; Ex. D-13
- Migrants released in Laredo "are largely unvaccinated."
  - Ex. D-2 ¶ 7

CBP "is releasing an alarmingly substantial number of immigrants into the City of McAllen, . . . Including individuals that are positive for COVID-19."

- Ex. D-38 at 1; *accord* Ex. D-39





# GA-37

Migrants are testing positive for COIVD-19 at alarming rates

- In Laredo, "approximately 40 to 50 percent of the migrants [they] have tested were positive for COVID-19."
  - Ex. D-2 ¶ 8

"The number of migrants who have tested positive for the novel coronavirus after being released by the Border Patrol into Texas has nearly doubled, officials say."

- Ex. D-41 (Mar. 8, 2021)

"The number of detainees who tested
positive for COVID-19 in the
Rio Grande Valley (RGV) Sector
alone has increased by 900% . . . ."

- Ex. D-46 at 1 (July 20, 2021); *see also* Ex. D-1

"More than 18 percent of migrant families and 20 percent of unaccompanied minors who recently crossed the U.S. border tested positive for Covid on leaving Border Patrol custody over the past two to three weeks, according to a document prepared this week for a Thursday briefing with President Joe Biden."

- Ex. D-44 (Aug. 7, 2021)



# GA-37

## Once released, migrants spread COVID-19 to others

"[B]usloads of migrants, an unknown number of whom are infected with COVID-19, are being transported to communities across the State of Texas, exposing Texans to the spread of COVID-19, as has already been reported in cities like La Joya, among others."

- Ex. D-1



# GA-37

The Whataburger Incident in La Joya

- A migrant family "had been apprehended by Border Patrol days prior and were released because they were sick with Covid-19."

  - Ex. D-28

- After being "turned over to Catholic Charities of The Rio Grande Valley," the family went to Whataburger, where "they were in visible ill condition as well as coughing . . . and sneezing without covering their nose and mouths."

  - Ex. D-5 at 2; *see also* Ex. D-28



# GA-37

Not an isolated incident

- "[Hidalgo County Judge] Cortez is also learning of multiple reports of migrants infected with COVID-19 interacting in public as they cough and sneeze without observing safety protocols such as the use of facial coverings."

  - Ex. D-30



# GA-37

These things happen because NGOs don't have the legal authority to detain migrants

"[A]ll of the people in the hotel were sick and he was aware that everyone staying in the hotel were told they could leave."

"[M]ore than half of the people that were placed in the hotel by Catholic Charities of the Rio Grande Valley had left the hotel."

- Ex. D-5 at 3



# GA-37

Catastrophic effects in South Texas border areas

- "[M]ore than 7,500 COVID-positive migrants had been released into McAllen by [CBP] since February and more than 1,500 in the last week."

    - Ex. D-45 at 1; *accord* Ex. D-29 at 2



# GA-37

Every Day in Hidalgo County:

- Hundreds of infections

- Hundreds of hospitalized patients, including dozens in ICUs

- Multiple deaths
  - Exs. D-32–D-37

# Overview



## Threshold

- First-Filed Rule
- Cause of Action

## Merits

- Preemption
- Intergovernmental Immunity

## Relief

- Scope
- Equities
- Public Interest



# First-Filed Rule

- "Courts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court."

  - *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)



# First-Filed Rule

- "The 'first to file' rule is grounded in principles of comity and sound judicial administration."
  - *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)



# First-Filed Rule

Test = "substantial overlap"

- "The rule does not . . . require that cases be identical."

- "Complete identity of parties is not required."

  - *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir. 1997)



# First-Filed Rule

- DOJ emphasizes that the rule is "discretionary"
    - ECF No. 17 at 14

- But who should exercise that discretion? Judge Pittman

"[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated."

*- Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997)

"The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."

*- Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)

"Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the [second court] to resolve the question of whether both should be allowed to proceed."

- *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971).

"[T]he ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits in [the first forum] belonged to the [first court]."

*- Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971).



"[T]hat balancing act is reserved only for the first-filed court."

- *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605 (5th Cir. 1999)



# First-Filed Rule

Test *for this Court* = whether the first-filed rule *might* apply

- "the potential overlap between the two cases"
  - *Cadle Co.*, 174 F.3d at 606
- "the likelihood of substantial overlap"
  - *Mann Mfg.*, 439 F.2d at 408



# First-Filed Rule

Likelihood of Substantial Overlap:

- Effectively the same parties

- Both focused on Title 42 issues at the intersection of public health and immigration

# First-Filed Rule



Likelihood of Substantial Overlap:

- *Texas v. Biden*: Challenging the "fail[ure] to detain, quarantine, and test" aliens for COVID-19

  - No. 4:21-cv-579, ECF No. 1 ¶ 141(e) (N.D. Tex. Apr. 22, 2021)

- *United States v. Texas*: Claiming a right to "release[]" aliens before "COVID-19 testing" occurs

  - ECF No. 1 ¶ 19; *see also id.* ¶ 35

# First-Filed Rule



- DOJ says the lawfulness of the underlying federal action is irrelevant

- But both preemption and intergovernmental immunity depend on the premise that federal agents are acting pursuant to valid federal statutes

"This Constitution, and *the Laws of the United States which shall be made in Pursuance thereof*; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."

- Supremacy Clause, U.S. Const. art. VI, cl. 2 (emphasis added)

"The District Court held that the LPSC rate order was not pre-empted because the Secretary's regulation was invalid. We affirm."

*- In re Cajun Elec. Power Co-op., Inc.*, 109 F.3d 248, 251 (5th Cir. 1997)

"[T]he states have no power . . . to retard, impede, burden, or in any manner control, the operations of the *constitutional* laws enacted by congress . . . ."

- *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819)  (emphasis added)



# First-Filed Rule



Now what?

- "transfer the matter to the [first court] for resolution of whether the [second] action should be allowed to proceed independently or should be consolidated in [the first forum]"

  - *Sutter Corp.*, 125 F.3d at 920



# Cause of Action

- All plaintiffs must have a cause of action

- Even the federal government



# Cause of Action

- The Supremacy Clause does not create a cause of action

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."

- Supremacy Clause, U.S. Const. art. VI, cl. 2

"It is equally apparent that the Supremacy Clause . . . certainly does not create a cause of action."

- *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015)

The Supremacy Clause "is silent regarding who may enforce federal laws in court, and in what circumstances they may do so."

- *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015)



# Cause of Action

- If DOJ were right, then congressionally created causes of action are mere surplusage

Under the Voting Rights Act, "the Attorney General may institute . . . an action for preventive relief . . . ."

- 52 U.S.C. § 10308(d)



# Cause of Action

- DOJ relies on a Tenth Circuit opinion that does not even address the relevant question
  - ECF No. 17 at 9



# Cause of Action

*Armstrong* had multiple holdings

- (1) The Supremacy Clause does not provide a cause of action

- (2) Equity provides a cause of action in some circumstances

- (3) By providing an alternate remedial scheme, Congress precluded an equitable cause of action.



# Cause of Action

This case is about the first holding—whether the Supremacy Clause provides a cause of action—which the Tenth Circuit did not address

- *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906 n.9 (10th Cir. 2016)



# Cause of Action

The Tenth Circuit did not suggest that the Supremacy Clause provides a cause of action.

It does not support DOJ's claim that there is a "cause of action for the United States under the Supremacy Clause."

- ECF No. 17 at 9

# Cause of Action



Like *Armstrong*, the Tenth Circuit found a cause of action based on "equitable authority."

- *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906 n.9 (10th Cir. 2016)



# Cause of Action

- But here, DOJ does not claim to have an equitable cause of action

- Nor did DOJ comply with the requirements for an equitable cause of action
  - *See* ECF No. 9 at 25–26



# Cause of Action

- DOJ also relies on *United States v. LeMay*, 322 F.2d 100 (5th Cir. 1963)

    - ECF No. at 17 at 9

- But *LeMay* found a statutory cause of action, not a free-floating cause of action that renders statutes superfluous

    - *See* 322 F.2d at 103

# Cause of Action



- Finally, DOJ relies on *In re Debs*, 158 U.S. 564 (1895), which focused on whether the federal government was injured by a strike obstructing the mail, not a cause of action under the Supremacy Clause

  - ECF No. at 17 at 10

- In any event, *Debs* would be part of the "ancien regime" the Court rejects today

  - *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)

"[D]ecisions before *Sandoval* frequently implied private rights of action without rigorous analysis."

Pre-*Sandoval* cases "are not binding nor persuasive . . . because each such source relies on pre-*Sandoval* reasoning."

- *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 616 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017)



# Facial Challenges

This is a facial, not as-applied, challenge

- A plaintiff challenges a law "on its face by seeking to enjoin its enforcement altogether"

  - *Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995)

- Here, DOJ wants to enjoin "any action to enforce the executive order"

  - ECF No. 3-4 at 2

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."

- *United States v. Salerno*, 481 U.S. 739, 745 (1987)



# Facial Challenges

- DOJ "could not sustain [its] burden even if [it] showed that a possible application of the rule . . . violated federal law."

  - *Edwards*, 514 U.S. at 155 n.6



# Possible Applications of GA-37

Local Governments

- Laredo "is sending busloads of migrants to Austin and Houston without testing them for coronavirus."

- "Laredo Mayor Pete Saenz said the city is sending four charter buses per day with a total of 200 migrants who have been sent by Border Patrol from the Rio Grande Valley to Laredo."

  - Sandra Sanchez, *Laredo Sending Busloads of Migrants to Austin and Houston Without Testing for Coronavirus* (Aug. 11, 2021), https://www.kxan.com/border-report/laredo-sending-busloads-of-migrants-to-austin-and-houston-without-testing-for-coronavirus/.



# Possible Applications of GA-37

Local Governments

- Dispersing COVID-positive migrants is a real problem

- The more they are moved, the greater the potential spread of the virus

"If possible, avoid transferring infected individual(s) to another facility unless necessary for medical care."

- CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (June 9, 2021) (Ex. D-20 at 15)

"Shuttling hundreds of individuals between facilities also places the communities surrounding detention facilities at a heightened risk of a COVID-19 outbreak."

- Ex. D-21

# Preemption Standard



- "Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives.'"

- Supreme Court "precedents 'establish that a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act.'"

  - *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011)

# Preemption



- DOJ does not argue that federal law prohibits Texas from regulating its own local governments

- Such an argument would fail



# Preemption

- Courts considering preemption cases are rightly suspicious of "interposing federal authority between a State and its municipal subdivisions."

- Local governments "are created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them in its absolute discretion."

  - *Nixon v. Mo. Mun. League*, 541 U.S. 125, 140 (2004)

"[P]reempting state or local governmental self-regulation (or regulation of political inferiors) would work so differently from preempting regulation of private players that we think it highly unlikely that Congress intended to set off on such uncertain adventures."

- *Nixon v. Mo. Mun. League*, 541 U.S. 125, 134 (2004)



"[F]ederal legislation threatening to trench on the States' arrangements for conducting their own governments should be treated with great skepticism, and read in a way that preserves a State's chosen disposition of its own power, in the absence of the plain statement *Gregory* requires."

- *Nixon v. Mo. Mun. League*, 541 U.S. 125, 140 (2004)



# Preemption

- DOJ doesn't point to any "plain statement" preempting state regulation of local governments

- Local governments "are created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them in its absolute discretion."

  - *Nixon v. Mo. Mun. League*, 541 U.S. 125, 140 (2004)



# Preemption

- Federal law doesn't preempt state regulations of whether local governments assist federal immigration agencies

- Therefore, it cannot preempt state regulations of whether local governments can transport migrants unilaterally



# Preemption

| *El Cenizo* (5th Cir.) | This Case |
|---|---|
| • Federal statute giving local governments a choice | • No federal statute giving local governments a choice |
| • State law mandating cooperation | • Executive order prohibiting transportation |
| • No preemption because Congress couldn't have mandated cooperation | • *A fortiori*, no preemption |



# Possible Applications of GA-37

Volunteers

- "Annunciation House volunteers drive groups of migrants . . . ."
  - Ex. P-8 ¶ 24

- Annunciation House does not claim to have a contract with (or even a grant from) the federal government



# Possible Applications of GA-37

Volunteers

- "Angry Tias is a grassroots volunteer organization" that "offer[s] transportation services to immigrants."

  - Ex. P-9 ¶¶ 2, 12

- Angry Tias does not claim to have a contract with (or even a grant from) the federal government



# Possible Applications of GA-37

Volunteers

- An individual volunteer "transported migrants on short trips to local parks for recreation."

    - Ex. P-10 ¶ 13

- That individual does not claim to have a contract with (or even a grant from) the federal government



# Possible Applications of GA-37

Volunteers

- "FIEL members often drive multiple people who are subject to [GA-37] in a group."

    - Ex. P-11 ¶ 10

- FIEL does not claim to have a contract with (or even a grant from) the federal government



# Possible Applications of GA-37

Local, not Federal, Contractors

- Project Amistad is "a non-profit organization contracted by El Paso County" that transports migrants locally.
  - Ex. P-8 ¶ 14

# Preemption



- DOJ's preemption claim requires it to identify a federal statute giving local governments, volunteers, and local contractors a right to be free from state regulation regarding the transportation of migrants

- DOJ hasn't done so

"[A]ll [types of preemption] work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted."

- *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018)



# Preemption

DOJ's *Arizona* argument is limited to one portion of GA-37

- DOJ (wrongly) argues that "the determination of which noncitizens are within the terms of the Title 42 order . . . is within the exclusive purview of the federal Executive branch."
  - ECF No. 3 at 14

- DOJ does not argue that the same is true for determining which migrants "have been detained by CBP for crossing the border illegally."
  - GA-37 (Ex. D-1)



# Preemption

- Whether a migrant "would have been subject to expulsion under the Title 42 order" is a public-health status, not an immigration status

- Congress did not put "Title 42" status within the exclusive purview of DHS

- It stems from an HHS / CDC order



# Preemption

Whether a migrant was "detained by CBP for crossing the border illegally" doesn't require DPS to assess immigration status

- Under that provision, "[i]t remains the [federal] agent who makes the underlying [immigration] determination."

- DPS does not make any "unilateral status-determinations *absent federal direction*."

  - *City of El Cenizo v. Texas*, 890 F.3d 164, 189 (5th Cir. 2018)



# Intergovernmental Immunity

- DOJ does not even attempt to satisfy the standard for facial relief

- No case holds that volunteers or local governments are immune from state regulation



# Intergovernmental Immunity

5        MR. BOYNTON:  We think that NGOs that have a grant

6   relationship with the federal government would be covered.

7   Someone who is strictly a volunteer and has no grant or

8   contractual relationship might not be.  We haven't identified

9   cases that extend the doctrine that far.

    - Hearing Tr. (8/2/21) at 11



# Intergovernmental Immunity

- States are allowed to regulate their own local governments

- When Texas regulated local governments' immigration activities, the Fifth Circuit largely upheld the law without anyone arguing for intergovernmental immunity

  - *See City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018)



# Scope of Relief

- When facial claims fail because at least one application of the challenged law is not preempted, courts deny relief without considering whether other applications might be preempted

  - *Edwards*, 514 U.S. at 155 n.6

  - *City of El Cenizo v. Texas*, 890 F.3d 164, 189–90 (5th Cir. 2018)



# Scope of Relief

- But if the Court issues an injunction, it should extend beyond federal employees and contractors

- No justification for enjoining enforcement against

  - Volunteers

  - Local governments

  - Etc.

"The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."

- *Lewis v. Casey*, 518 U.S. 343, 357 (1996)

"The nature of the . . . remedy is to be determined by the nature and scope of the constitutional violation."

- *Missouri v. Jenkins*, 515 U.S. 70, 89 (1995) (cleaned up);
*accord Lewis*, 518 U.S. at 357





# Equities and Public Interest

- The federal government acknowledges that migrants pose a serious risk of spreading COVID-19

# CBP COVID-19 Response

"CBP personnel put themselves and their families at risk with every encounter at the border. Since the start of the pandemic, more than 8,900 CBP employees have tested positive for COVID-19, and 33 have passed away.."

- Ex. D-25 at 2; *see also* Ex. D-26 at 4–5

"Even with the spread of the COVID-19 virus, human smugglers continue to try these brazen attempts with zero regard for the lives they endanger nor to the health of the citizens of our great nation.."

- CBP, *Large Groups of Migrants Encountered on Consecutive Days* (July 20, 2021) (Ex. D-27)

# Equities and Public Interest



- Protecting public health is in the public interest

"The continued introduction of more unvaccinated and COVID-positive migrants will . . . create a public health crisis."

"Effectively combatting COVID-19 in Laredo requires ending or reducing the mass release of COVID-positive migrants into the community."

- Dr. Victor Treviño, Laredo Health Authority (Ex. D-2 ¶ 14); *see also* Ex. D-51