UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>THE STATE OF TEXAS and GREG ABBOTT, in his official capacity as Governor of the State of Texas,<br><br>　　　　　Defendants. | Case No. 3:21-cv-173 |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, STAY PROCEEDINGS**

## INTRODUCTION

The Court should deny Texas's motion to transfer this case to the U.S. District Court for the Northern District of Texas, where Texas previously filed suit challenging the federal government's alleged failure to fully implement the Centers for Disease Control and Prevention (CDC)'s Title 42 order regarding the expulsion of certain noncitizens during the pandemic (the "Title 42 case"). Transfer is unwarranted because the two cases do not substantially overlap. This case is brought by the United States and challenges the legality of Texas's migrant transport executive order under the Supremacy Clause of the U.S. Constitution. The Title 42 case was filed by Texas before the migrant transport executive order was even adopted and does not involve the legality of that order. Instead, the Title 42 case concerns the legality of federal policies and agency actions under the Administrative Procedure Act (APA). In the present case, the United States will show that Texas's executive order will interfere with federal immigration operations. The evidence supporting that showing has no bearing on the lawfulness of the federal government's implementation of the Title 42 order, which will be assessed largely based on the administrative record underlying the agency decisions challenged in the Title 42 case. Because the core issues in these two cases, as well as the proof to be adduced in each case, are completely different, the first-to-file rule is inapplicable and this Court should deny Texas's motion to transfer.

The Court should also deny Texas's alternative request to stay this case "until the Northern District of Texas determines whether this case should proceed." Defs.' Mot. to Transfer Venue to First-Filed Court, ("Mot. to Transfer"), ECF No. 35 at 1. Contrary to Texas's suggestion, the law is clear that the court in the second-filed case has the discretion to determine whether a movant invoking the first-to-file rule has shown a likelihood of substantial overlap between the two cases. Were it otherwise, a defendant in the second-filed case would always be able to transfer the case to the court in the first-filed case, even absent similarities between the two cases, depriving the court in the second-filed case of all discretion to manage the case.

## BACKGROUND

### I. THE UNITED STATES' CHALLENGE TO THE TEXAS EXECUTIVE ORDER

On July 28, 2021, the Texas Governor issued Executive Order No. GA-37, entitled "Relating to the transportation of migrants during the COVID-19 disaster." Ex. 1 to App. in Supp. of Defs.' Resp. in Opp'n to Pl.'s Motion for an Emergency TRO ("EO"), at 5. The executive order, which the Governor made effective immediately, purports to mandate that "[n]o person, other than a federal, state, or local law enforcement official, shall provide ground transportation to a group of migrants who have been detained by CBP for crossing the border illegally or who would have been subject to expulsion under the Title 42 order." *Id.* at 6 ¶ 1. The order contains no exception for federal non-law-enforcement personnel or federal contractors, grantees, and nongovernmental organization (NGO) partners, upon whom the federal government relies heavily for the transportation of migrants in its custody or upon the migrants' release.

Because of the expected significant interference with, and harms to, federal immigration operations, the United States brought suit on July 30, 2021, challenging the executive order under the Supremacy Clause and seeking emergency injunctive relief. This Court granted a temporary restraining order (TRO) on August 2, 2021 and has extended it until August 27, 2021.

### II. CDC'S TITLE 42 ORDERS

Section 265 of Title 42 of the U.S. Code and its implementing regulation, 42 C.F.R. § 71.40, authorize CDC to prohibit, in whole or in part, the introduction into the United States of persons from designated foreign countries or places to avert the serious danger of the introduction of a quarantinable communicable disease. In light of the COVID-19 pandemic, CDC has exercised its Title 42 authority to issue successive orders temporarily prohibiting the introduction of certain noncitizens—primarily those without travel documents—who would otherwise be held in a congregate setting in a port of entry or U.S. Border Patrol station at or near the U.S.-Canada or U.S.-Mexico border. *See, e.g.*, 85 Fed. Reg. 17,060-02 (Mar. 26, 2020); 85 Fed. Reg. 65,806-01 (Oct. 16, 2020). The most recent CDC Title 42 order was issued on August 2, 2021. *See* 86 Fed. Reg.

42,828-02 (Aug. 5, 2021).[1] Customs officers in the Department of Homeland Security (DHS) are charged with enforcing the CDC orders. *See id* at 42,841; *see also* 42 U.S.C. § 268.

The August 2 order contains an express exception for unaccompanied noncitizen children, in recognition of the specific COVID-19 mitigation measures available in facilities providing care for such children. *See* 86 Fed. Reg. at 42,829. CDC had issued a notice in February 2021 announcing its decision to temporarily except unaccompanied noncitizen children encountered in the United States from the Title 42 order pending CDC's public health reassessment of the Title 42 order. *See* 86 Fed. Reg. 9942-01 (Feb. 17, 2021). In July 2021, CDC issued a new order excepting unaccompanied children from the Title 42 process and explained the public health rationale for the exemption. *See* 86 Fed. Reg. 38717-02 (July 22, 2021). That July order was then incorporated by reference into the August Title 42 order.

Like its predecessor orders, the August order also excepts from its scope "[p]ersons whom customs officers determine, with approval from a supervisor, should be excepted from this Order based on the totality of the circumstances, including consideration of significant law enforcement, officer and public safety, humanitarian, and public health interests." 86 Fed. Reg. at 42,841. The August order does not contain an exception for noncitizen families encountered by U.S. Customs and Border Protection ("CBP"). But the order recognized that DHS had been unable to expel a significant percentage of families under the prior Title 42 orders, "given a range of factors, including, most notably, restrictions imposed by foreign governments." *Id.* at 42,836 & nn.82-83 (noting that only a third of families were expelled in the current fiscal year, from October 2020 to August 2021). The order noted, for example, that the Mexican government "has placed certain nationality- and demographic-specific restrictions on the individuals it will accept for return via the Title 42 expulsion process," "greatly reducing DHS' ability to expel [noncitizen families]." *Id.* at 42,836; *id.* (citing the example that along sections of the U.S.-Mexico border, Mexican officials have refused to accept the return of any non-Mexican family with children under the age of seven). In

---

[1] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/downloads/CDC-Order-Suspending-Right-to-Introduce-_Final_8-2-21.pdf.

addition, the order noted that many countries have imposed travel requirements, "including COVID–19 testing, consular interviews, and identity verification that can delay repatriation," often "mak[ing] prompt expulsion a practical impossibility." *Id.*

### III.   TEXAS'S SUIT IN THE NORTHERN DISTRICT OF TEXAS

In April 2021, Texas sued the federal government in the Northern District of Texas, asserting seven causes of actions under the APA and one constitutional claim relating to the federal government's enforcement of the Title 42 order and a provision in the Immigration and Nationality Act (INA).  *See* Ex. A to Mot. to Transfer, ECF No. 35-1, *Texas v. Biden*, 4:21-cv-00579-P, Complaint, ECF No. 1 (N.D. Tex. Apr. 22, 2021).  The first five counts in the case are APA claims challenging CDC's February 2021 notice exempting unaccompanied noncitizen children from the application of Title 42 order.  The three remaining counts assert (1) an APA claim for DHS's purported failure to enforce the October order as to migrant families; (2) an APA claim for DHS's purported failure to comply with an INA provision, 8 U.S.C. § 1222(a), which in some circumstances requires DHS to detain a noncitizen "arriving at ports of the United States" for a sufficient amount of time to determine whether the noncitizen has been afflicted with a communicable disease; and (3) a claim under the Take Care Clause of the U.S. Constitution.

Approximately two months after filing suit, Texas moved for a preliminary injunction on two of its APA claims relating to the February notice.  As noted above, the CDC subsequently issued an order in July confirming the exception of unaccompanied noncitizen children from the Title 42 order.  Accordingly, the court denied Texas's motion for preliminary injunction as moot. *See Texas v. Biden*, 4:21-cv-00579, Order Denying PI, ECF No. 54, at 4–5 (N.D. Tex. July 29, 2021).  The court set an August 16, 2021 deadline for Texas to file any amended complaint, but Texas recently obtained an extension until August 23, 2021 to do so.

**ARGUMENT**

I.  **THIS COURT HAS DISCRETION TO DETERMINE WHETHER THE FIRST-TO-FILE RULE APPLIES**

Texas argues that under the first-to-file rule, "discretion belongs to the first-filed court, not this Court," to decide whether the second suit "must be dismissed, stayed or transferred and consolidated." Mot. to Transfer at 2 (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997)). Texas's argument has no merit because any exercise of discretion by the court in the first-filed case occurs only if "the court in which the case was *last filed*" has made an initial determination of a "likelihood of a substantial overlap between the two suits." *Cadle v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603, 605 (5th Cir. 1999) (emphasis added and citation omitted).

As the Fifth Circuit has explained, "[u]nder the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677-78 (5th Cir. 2011). To invoke the first-to-file rule, the movant must show a "likelihood of a substantial overlap between the two suits." *Cadle*, 174 F.3d at 605. If the movant fails to make that showing, the later-filed case proceeds in the forum the plaintiff has selected. That is, the initial determination of a "likelihood of a substantial overlap between the two suits" is committed to the sound discretion of the court in the second-filed case. *See Int'l Fidelity*, 665 F.3d at 678 ("The relevant inquiry is whether the [second-filed] district court abused its discretion in concluding that the matters pending in the [first-filed court] and the district court do not substantially overlap."); *id.* at 677 ("The first-to-file rule is a discretionary doctrine" and its application is "normally review[ed] for abuse of that discretion."). But if the court in the second-filed action finds the movant has made the requisite showing and transfers the case, the court in the first-filed case may decide whether consolidation of the two cases, dismissal or stay of the second-filed case, or other dispositions are warranted.

5

The cases Texas cites are not to the contrary and, moreover, confirm this Court's discretion to make the substantial overlap determination. In *Sutter Corp. v. P & P Industries, Inc.*, the Fifth Circuit found that the court with the later-filed case abused its discretion in declining to transfer the case based on its interpretation of the venue statutes, when "there [was] no doubt that substantial overlap exists" between the two lawsuits. 125 F.3d at 920. As the court reasoned, "*once the likelihood of substantial overlap [of issues] between the two suits had been demonstrated*, it was no longer up to the [second-filed] court . . . to resolve the question of whether both should proceed. By virtue of its prior jurisdiction over the common subject matter . . . the determination of whether there actually was substantial overlap requiring consolidation of the two suits . . . belonged to the [first-filed court]." *Id.* (emphasis added and citation omitted). *Sutter*, therefore, is consistent with proposition that the court in the second-filed case has the discretion to determine initially the degree of overlap between the cases. And in *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947 (5th Cir. 1997), the Fifth Circuit similarly found the court in the second-filed action abused its discretion when it declined to transfer the case to the court in the first-filed action on the basis that the parties in the two cases were not identical, even though there was substantial overlap between the two cases. *Id.* at 952. *Save Power* does not suggest that the court in the second-filed action lacks discretion to make an initial determination of "likelihood of a substantial overlap between the two suits" in deciding whether to transfer.

## II.   TEXAS FAILS TO SHOW A LIKELIHOOD OF SUBSTANTIAL OVERLAP BETWEEN THIS CASE AND THE TITLE 42 CASE

This Court should decline to transfer or stay this suit because Texas has not shown a likelihood of substantial overlap between this case and the Title 42 case. In assessing the likelihood of substantial overlap, the court in the second-filed action may consider whether both actions raise the same "core issue[s]" and whether the parties will adduce substantially the same proof in both actions. *Int'l Fidelity*, 665 F.3d at 678 (citation omitted). When "overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving

the dispute." *Save Power*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)).  These factors counsel against transfer.

*First*, the "core issues" in these two cases are completely different.  The Title 42 case alleges that the federal defendants have "violated the Immigration and Nationality Act . . . the Public Health Service Act of 1944 . . . and the Administrative Procedure Act." *Texas v. Biden*, 4:21-cv-00579-P, Complaint, ECF No. 1, at ¶ 1 (N.D. Tex. Apr. 22, 2021).  The case seeks the expulsion of unaccompanied children and migrant families under the Title 42 order and the detention under 8 U.S.C. § 1222 of noncitizens arriving at ports of entry for purposes of determining whether they have been afflicted with a communicable disease.  Thus, the "core issues" in the Title 42 case are the legality of federal policies and agency actions.  The Texas migrant transport executive order is not at issue in the Title 42 case.  Indeed, Texas's case was filed months before Texas even issued the migrant transport executive order.

The case before this Court, by contrast, has nothing to do with the legality of any federal policy.  Despite Texas's contrary claim that both cases "turn on the same core issue of the legality of the Biden Administration's actions," Mot. to Transfer at 3–4, this case is focused only on the constitutionality under the Supremacy Clause of a state executive order.  The constitutional concerns with Texas taking immigration enforcement into its own hands—by requiring state officers to determine whether a group of migrants "have been detained by CBP for crossing the border illegally or [ ] would have been subject to expulsion under the Title 42 order," EO at 2—are not before the court in the Title 42 case.  Nor is the issue of whether the state has interfered with federal immigration operations by restricting those who may transport migrants to only federal law enforcement officers.  There are no concerns of contradictory rulings if this Court continues to preside over this case.

Fifth Circuit precedent counsel that a much closer relationship between the first-filed and

7

second-filed cases is required to find a substantial overlap of "core issues" in the cases.[2] *International Fidelity* is particularly instructive. There, the Fifth Circuit found that the district court did not abuse its discretion to permit a second-filed indemnity action to go forward, even though the determination of whether the defendant owed customs duties in the first-filed suit would impact whether the plaintiff had a right to indemnification for duties it paid on the defendant's behalf. *Int'l Fidelity*, 665 F.3d at 679. Although the court found that "there [was] some risk of 'duplication' between the proceedings" in the two cases, *id.*, it concluded that the core issues in the two forums were not the same—one involved whether Customs properly assessed duties against the defendant, while the other concerned whether, based on Texas common law, the plaintiff had a right to indemnification for duties paid on defendant's behalf. *Id.* at 678. As in *International Fidelity*, there is no "substantial" overlap of the issues between the two cases here.

Citing *Printz v. United States*, 521 U.S. 898 (1997), Texas argues that this Court should transfer or stay this case because if the court in the Title 42 case invalidates the federal policies challenged in that case, "interference with the enforcement of those nullified policies cannot be

---

[2] *See Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*, 694 F. App'x 225, 227 (5th Cir. 2017) ("substantial[] overlap" between an adversary proceeding in bankruptcy court and a declaratory judgment action in district court that both addressed defendant's right to indemnification from plaintiff); *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) (enjoining second filed suit that "expressly seeks attorney's fees and costs that [plaintiff] incurred in the [first-filed] lawsuit" as well as quantum meruit claims that "arise directly out of the parties' agreement regarding the engines that formed the 'settlement' in the [first-filed] case"); *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 307 (5th Cir. 2013) (first-filed adversary action in bankruptcy and second-filed district court action "presented precisely the same, purely legal dispute" about guaranty agreements); *Cadle*, 174 F.3d at 601–02 (second-filed court characterized RICO case alleging fraud in first-filed bankruptcy proceedings as "a collateral attack on a decision of a sister court") (citation omitted); *Save Power*, 121 F.3d at 951 (first- and second-filed cases substantially overlap because both actions "center on the question whether [plaintiff] can proceed with foreclosure on any or all of its security interest[s]" in certain assets under a subordination agreement); *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of the ILA*, 751 F.2d 721, 724 (5th Cir. 1985) (second-filed suit challenged validity of a decision by an emergency hearing panel convened to resolve a labor dispute, while first-filed suit sought to enforce the panel's decision); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) (substantial overlap between patent infringement suits and declaratory judgment actions seeking ruling on patent validity for two related patents with identical disclosures).

preempted under the Supremacy Clause." Mot. to Transfer at 4; *see also id.* at 6. *Printz*, however, says nothing about the application of the first-to-file rule, let alone when a state law intrudes on federal operations in violation of the Supremacy Clause; it only involved state officials' challenge to a federal law that commandeered the state's resources.

In any event, Texas's argument is unpersuasive because the federal law that the Texas migrant transport executive order obstructs is the INA as a whole and the immigrations operations under the INA that necessitate the transport of migrants. The Title 42 case will not "nullify" the INA or moot this case by rendering it unnecessary for the federal government to transport migrants. This is true even if the court in the Title 42 case were to find (over the arguments of the federal government to the contrary) that CDC has improperly excepted unaccompanied noncitizen children from the Title 42 order, that more migrant families should be expelled pursuant to the Title 42 order, or that DHS should "detain and quarantine under 8 U.S.C. § 1222(a) all [migrants] who could carry a communicable disease of public health significance for at least fourteen days before releasing them into the United States." *Texas v. Biden*, 4:21-cv-00579-P, Complaint, Prayer for Relief (c).

Indeed, Texas has not challenged the case-by-case exception to the Title 42 order that would allow DHS to process migrants under the immigration provisions in Title 8 of the U.S. Code. *See, e.g.*, 86 Fed. Reg. at 42,841 (providing that the Title 42 order does not apply to "[p]ersons whom customs officers determine, with approval from a supervisor, should be excepted from this Order based on the totality of the circumstances, including consideration of significant law enforcement, officer and public safety, humanitarian, and public health interests"); *see also Texas v. Biden*, Reply in Supp. of Pl.'s Mot. for PI, No. 4:21-cv-00579-P, ECF No. 46, at 15 (N.D. Tex. July 12, 2021) (disclaiming any reliance interest in case-by-case, individualized exceptions to the Title 42 Order). Nor has Texas excluded from the migrant transport executive order the myriad forms of transportation that would still be necessary under Texas's view of the law, such as transporting migrants between federal facilities or in furtherance of removal or upon an order granting release by immigration courts.

*Second*, the proof the parties would adduce in this case and the Title 42 case are also dissimilar. As noted above, the Title 42 case primarily seeks review of federal agency actions under the APA. *See Texas v. Biden*, 4:21-cv-00579-P, Complaint, ¶¶ 84–132 (alleging seven causes of actions under the APA). Such claims typically are limited to a review of the administrative record underlying the agency's decisions. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 905 (5th Cir. 1983). In the Title 42 case, Texas has tacked on a claim under the Take Care Clause—a clause that speaks only to the President, not to his subordinates, *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–93, 495–97 (2010); *Printz*, 521 U.S. at 922, and has never been held to provide an enforceable private right of action. But that claim likewise concerns the federal government's compliance with laws that are already identified in the first seven APA counts. *Texas v. Biden*, 4:21-cv-00579-P, Complaint, ¶¶ 133-40. By contrast, in this case, the proof will focus on the Texas executive order's actual or expected interference with federal immigration operations. Texas argues that the court's review in the Title 42 case is not necessarily limited to the administrative record because certain exceptions may apply and because the Take Care Clause claim is not an APA claim. *See* Mot. to Transfer at 4–5. But even if the court's review in the Title 42 case could extend beyond the administrative record, Texas never explains how the prospective impact of Texas's migrant transport executive order at issue here would be relevant to the retrospective claims of unlawful agency decision-making or action in the Title 42 case.

In sum, these two cases do not substantially overlap. Proceeding with this case in this Court would not trigger the concerns animating the first-to-file rule—*i.e.*, the need to avoid "the waste of duplication," "rulings which may trench upon the authority of sister courts," and "piecemeal resolution of issues that call for a uniform result," *Cadle*, 174 F.3d at 603 (quoting *W. Gulf Mar. Ass'n*, 751 F.2d at 729). Accordingly, there is no basis to apply the first-to-file rule here.

## CONCLUSION

For these reasons, the Court should deny Defendants' motion to transfer venue or in the alternative, to stay proceedings.

Date: August 19, 2021                                   Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

JEAN LIN
Special Litigation Counsel

/s/__*Michael Gerardi*_____
MICHAEL GERARDI
ZACHARY A. AVALLONE
STEPHEN EHRLICH
JOSHUA M. KOLSKY
ANTONIA KONKOLY
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel: (202) 616-0680
Fax: (202) 616-8470
E-mail: michael.j.gerardi@usdoj.gov

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that a copy of this filing was served on the other parties to this action and their counsel of record through electronic filing in the Court's ECF system on August 19, 2021.

/s/ *Michael J. Gerardi*

Michael J. Gerardi