UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**THE STATE OF TEXAS; GREG ABBOTT,** in his official capacity as Governor of Texas,<br><br>Defendants.<br><br><br>**ANNUNCIATION HOUSE; ANGRY TIAS & ABUELAS OF THE RIO GRANDE VALLEY; JENNIFER HARBURY; FIEL HOUSTON,**<br><br>Consolidated Plaintiffs,<br><br>v.<br><br>**GREG ABBOTT,** in his official capacity as Governor of the State of Texas; and **STEVEN MCCRAW,** in his official capacity as Director of the State of Texas Department of Public Safety,<br><br>Consolidated Defendants. | Case No. 3:21-cv-00173-KC (Consolidated)<br><br><br><br><br><br><br><br><br><br>Case No. 3:21-cv-00178 |

**AMICUS CURIAE IMMIGRATION REFORM LAW INSTITUTE
BRIEF IN SUPPORT OF
<u>DEFENDANTS' MOTIONS TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................3

INTEREST OF AMICUS CURIAE ........................................................................................5

SUMMARY OF THE ARGUMENT ......................................................................................5

ARGUMENT ...........................................................................................................................7

    I.    GA-37 is not preempted by Federal Law. ....................................................................7

        A.    Enforcement of GA-37 Presents No Obstacle to Congress's Purposes and Objectives. ..................................................................................................................8

        B.    The Method of Enforcement of GA-37 Does Not Conflict with Those of the Immigration and Nationality Act. .............................................................................11

CONCLUSION ......................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*, 567 U.S. 387 (2012) ...............................................................7, 11, 12, 13

*Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190 (5th Cir. 2019) ...................................................6

*Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582 (2011) ............................11

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)........................................................8

*CSX Transp. v. Easterwood*, 507 U.S. 658 (1993) .........................................................................8

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992).........................................................7

*Hines v. Davidowitz*, 312 U.S. 52 (1941) .....................................................................................6, 8

*Kansas v. Garcia*, 140 S. Ct. 791 (2020)..................................................................................11, 12

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) .................................................................................8

*Motor Coach Employees v. Lockridge*, 403 U.S. 274 (1971)........................................................11

*Rice v. Santa Fe Elevator Corp*, 331 U.S. 218 (1947) ........................................................7, 9, 13

*Savage v. Jones*, 225 U.S. 501 (1912)..........................................................................................7, 9

*United States v. Wheeler*, 435 U.S. 313 (1978).............................................................................11

*Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524 (5th Cir. 2013) .........8

**Statutes**

1222(a)...................................................................................................................................5, 9, 12

42 U.S.C. § 265 ........................................................................................................................5, 12

8 U.S.C. § 1182 (a)(1)(A)(i).................................................................................................9, 12

8 U.S.C. § 1182(d)(5).......................................................................................................................8

8 U.S.C. § 1226(a)(2)(B).................................................................................................................8

8 U.S.C. § 1229c..............................................................................................................................8

8 U.S.C. § 1324(a)...........................................................................................................................9

8 U.S.C. §§ 1182(a)(1)(A)(i) ................................................................................................................5

**Other Authorities**

86 Fed. Reg. 38717 ............................................................................................................................12

Executive Order GA-37, Relating to the transportation of migrants during the Covid-19 disaster

(July 28, 2021) ..............................................................................................................................4

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ....................................................................................................................6

**INTEREST OF AMICUS CURIAE**

The Immigration Reform Law Institute ("IRLI") is a not for profit 501(c)(3) public interest law firm incorporated in the District of Columbia. IRLI is dedicated achieving responsible immigration policies that serve the best interest of the nation. IRLI has litigated or filed *amicus curiae* briefs in many immigration-related cases before federal courts (including this Court) and administrative bodies. For more than twenty years, the Board of Immigration Appeals has solicited *amicus* briefs drafted by IRLI staff from IRLI's parent organization, the Federation for American Immigration Reform, because the Board considers IRLI an expert in immigration law.

**SUMMARY OF THE ARGUMENT**

Defendants seek a motion to dismiss Plaintiffs' complaints challenging an executive order issued by Governor Abbott in response to the border crisis and the COVID-19 pandemic. Citing the "catastrophic effect on public health" created by these emergencies, Governor Abbott restricted the transportation of groups of illegal aliens to protect the health of Texans. The order provides: "No person, other than a federal, state, or local law-enforcement official, shall provide ground transportation to a group of migrants who have been detained by CBP for crossing the border illegally or who would have been subject to expulsion under the Title 42 order." Executive Order GA-37, Relating to the transportation of migrants during the Covid-19 disaster, at 2 (July 28, 2021).

GA-37 is not preempted because it merely restricts private individuals in an effort to stop the spread of COVID, it does not make compliance with both federal and state law impossible, and it is not at obstacle to the implementation and enforcement of the Immigration and Nationality Act ("INA").

GA-37 neither conflicts with nor obstructs federal immigration law because it is consistent with congressional purposes reflected in the INA.  GA-37 is not an obstacle to federal immigration law because enforcement does not block "the accomplishment and execution of the full purposes and objectives of Congress."  *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  *See also Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 195 (5th Cir. 2019) (internal citation omitted) (explaining that "conflict preemption[] occurs either where compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.").  In fact, GA-37 achieves the same objectives Congress intended—prohibition of the transportation of illegal aliens and restriction of entry based on public health interests.

Further, enforcement of GA-37 does not obstruct the federal government's execution of the INA or conflict with federal methods of enforcement.  In fact, GA-37 does not attach the criminal penalties that the INA does to those who transport illegal aliens in groups.  Texas officials are merely instructed to send the vehicle back to the border for the aliens to be processed under Title 42. GA-37, like the INA and Title 42 (as well as their implementing regulations), ensures that potentially sick aliens are not released into the United States.  42 U.S.C. § 265; 8 U.S.C. §§ 1182(a)(1)(A)(i), 1222(a).  Thus, GA-37 is a tool for, and not an impediment to, the enforcement of federal immigration law.

Finally, even if Texas's enforcement of GA-37 impinged on the executive branch's goals to deprioritize the enforcement of immigration law, that would not create a conflict with federal law for preemption purposes.  The Supremacy Clause focuses on the "law of the land," which is reflected through congressional enactments and not ever-changing executive priorities.

**ARGUMENT**

**I. GA-37 is not preempted by Federal Law.**

The Supremacy Clause of the U.S. Constitution ensures that where a conflict arises, federal law triumphs. U.S. Const. art. VI, cl. 2 ("the Laws of the United States . . . shall be the supreme Law of the Land . . . Laws of any State to the Contrary notwithstanding."). As the Supreme Court explained, "[t]he Supremacy Clause provides a clear rule . . . Congress has the power to preempt state law." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Thus, federal law will preempt state law where "the clear and manifest purpose of Congress" is that federal law be supreme. *Rice v. Santa Fe Elevator Corp*, 331 U.S. 218, 230 (1947).

Preemption by Congress can be express or implied. *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal citation and quotation marks omitted) ("Pre-emption may be either express or implied, and is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose."). An implied conflict may arise where "compliance with both federal and state regulations is a physical impossibility" or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399. "If the purpose of the act cannot be otherwise accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power." *Savage v. Jones*, 225 U.S. 501, 533 (1912). As the Fifth Circuit has noted: "[r]egarding field preemption, the Court cautioned in *DeCanas*: "[f]ederal regulation . . . should not be deemed preemptive of state regulatory power in the absence of persuasive reasons either that the nature of the regulated subject matter permits no

other conclusion, or that the Congress has unmistakably so ordained." *Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 566-67 (5th Cir. 2013) (internal citation omitted).

Here, there is no conflict between GA-37 and federal immigration law. There is clearly no conflict-impossibility preemption because GA-37 does not conflict with the terms of federal law. GA-37 is applicable to private individuals transporting migrants within the state and thus does not interfere with the government's ability to release or transport aliens in compliance with the INA. There is no obstacle preemption because the order, rather than obstructing Congressional purpose, aids the enforcement of federal immigration law by ensuring that illegal aliens who are potentially carrying COVID-19 are not improperly transported within U.S. borders and are properly detained under the INA. Indeed, GA-37 does this without obstructing federal enforcement methods or unlawfully impeding federal discretion.

**A. Enforcement of GA-37 Presents No Obstacle to Congress's Purposes and Objectives.**

Preemption review is "informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 374 n.8 (2000). *See also CSX Transp. v. Easterwood*, 507 U.S. 658, 664 (1993) ("Evidence of preemptive purpose is sought in the text and structure of the statute itself."). A court reviewing a claim of implied preemption must "determine whether, under the circumstances of this particular case, [state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines*, 312 U.S. at 67. *See also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (explaining that "the purpose of Congress is the ultimate touchstone in every preemption case.") (internal quotation marks omitted). Thus, state law is preempted only where "the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect." *Savage*, 225 U.S. at 533-

8

34. Texas's enforcement of GA-37 does not present such an obstacle to federal immigration officials. In fact, the federal government may pursue all of Congress's purposes and objectives as provided in the INA regardless of whether Texas enforces GA-37.

GA-37 is not an obstacle to the federal government's ability to release and transport aliens under the INA. In fact, because it is a public health law restricting the intra-state actions of private individuals transporting groups of migrants, Texas's enforcement of GA-37 will have zero impact on the ability of the federal government to achieve congressional objectives such as discretionary humanitarian parole, 8 U.S.C. § 1182(d)(5), conditional release, 8 U.S.C. § 1226(a)(2)(B), or release under voluntary departure, 8 U.S.C. § 1229c. GA-37 explicitly applies to transportation by private individuals, so there is no indication or reason to consider it would interfere with the federal government's ability to make such immigration decisions. In fact, GA-37 specifically provides that local, state, and federal officials are exempt from its reach, and thus may continue to transport aliens, in groups, as needed.

Of course, GA-37 would be preempted were it to achieve results contrary to congressional purposes—for example, if Texas prohibited anyone, private or government, from transportation of illegal aliens. Any "state policy [that] produce[s] a result inconsistent with the objective of [a] federal statute" is preempted. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (citing *Hill v. Florida*, 325 U.S. 538, 541-42 (1945) (holding that Florida's licensing of union representatives was preempted by the National Labor Relations Act because it circumscribed the congressional objective that workers have freedom to choose bargaining representatives.). Here, however, Texas's enforcement of GA-37 does not create results that conflict with the objectives of a federal statute—the INA. In fact, GA-37 furthers congressional objectives. Prosecution of private parties for the transport of illegal aliens within U.S. borders was specifically contemplated

9

by Congress. Much like GA-37, the INA includes criminal penalties for anyone who "transports, or moves or attempts to transport or move" illegal aliens within the United States. 8 U.S.C. § 1324(a). Enforcement of GA-37 thus achieves the same objectives and therefore does not obstruct the INA or its execution.

Moreover, GA-37 furthers the accomplishment of Congress's purposes and objectives regarding public health and immigration. In fact, Congress clearly expressed that it intended to prevent the spread of disease by stopping it at the border, providing:

> whenever the Attorney General has received information showing that any aliens are coming from a country or have embarked at a place where any of such diseases [under 8 U.S.C. § 1182(a)] are prevalent or epidemic, such aliens *shall be detained* for a sufficient time to enable the immigration officers and medical officers to subject such aliens to observation and an examination sufficient to determine whether or not they belong to inadmissible classes.

8 U.S.C. § 1222(a) (emphasis added). Congress ensured the protection of citizens from disease carrying aliens by deeming such aliens inadmissible. *See,* 8 U.S.C. § 1182 (a)(1)(A)(i) ("any alien who is determined . . . to have a communicable disease of public health significance is inadmissible."). Thus, GA-37 furthers the purpose and objective as the INA by preventing diseases such as COVID-19 from being carried into Texas communities by illegal aliens. To the extent that Texas's enforcement of GA-37 relates to the INA, the result is exactly what the INA intends: prohibition of transporting illegal aliens potentially carrying communicable diseases such as COVID-19 within U.S. borders. The INA can hardly preempt Governor Abbott from producing the same result that the INA is expressly designed to achieve.

Supreme Court precedent supports this conclusion. For example, the Court upheld an Arizona law requiring employment eligibility verification, explaining that the "requirement is entirely consistent with federal law." *Chamber of Commerce of the United States v. Whiting*, 563

10

U.S. 582, 608 (2011). The Court later upheld another Arizona law, known as a "show your papers" law, which required state law enforcement officers ascertain arrestees' immigration status. *Arizona*, 567 U.S. at 394.

While it is true that GA-37 achieves a result that the federal government can also achieve, that does not mean GA-37 is preempted. As the Supreme Court recently explained, "[t]he mere fact that state laws . . . overlap to some degree with federal criminal provisions does not even begin to make a case for conflict preemption. From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 140 S. Ct. 791, 806 (2020). Concurrent state and federal jurisdiction is a feature of our system of dual sovereignty. *See United States v. Wheeler*, 435 U.S. 313, 317 (1978) ("[A]] federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one."). The Supreme Court has not found preemption in many contexts in which states and the federal government prohibit the same conduct. *Arizona*, 567 U.S. at 430-31 (Scalia, J., concurring in part and dissenting in part) ("The sale of illegal drugs, for example, ordinarily violates state law as well as federal law, and no one thinks that the state penalties cannot exceed the federal."). The overlapping of state and federal jurisdiction and the potential enforcement by both entities is an unexceptional, well-established part of our federal system.

**B. The Method of Enforcement of GA-37 Does Not Conflict with Those of the Immigration and Nationality Act.**

A state law may still be preempted even where it has the same objectives as a federal statute where there is a conflict between state and federal enforcement methods. *See Motor Coach Employees v. Lockridge*, 403 U.S. 274, 287 (1971) ("Conflict in technique can be fully as disruptive to the system Congress erected as a conflict in overt policy."). The absence of a conflict

11

means the state law in such case is not preempted. Here, no such "conflict in technique" exists between enforcement of GA-37 and the federal government's enforcement of the INA.

In cases such as this where the state policy is aligned with congressional objectives, obstacle preemption requires an actual conflict between state and federal methods of enforcement. For example, the Supreme Court in *Arizona* held that the state's imposition of criminal penalties for employment of illegal aliens was preempted by Congress's failure to include such penalties in federal law. *Arizona*, 567 U.S. at 406 (explaining that while the state law includes "one of the same goals as federal law . . . Congress decided it would be inappropriate to impose criminal penalties on aliens who seek or engage in unauthorized employment. It follows that a state law to the contrary is an obstacle to the regulatory system Congress chose."). But "in the vast majority of cases where federal and state laws overlap, allowing the States to prosecute is entirely consistent with federal interests." *Kansas*, 140 S. Ct. at 806.

Here there is no such "conflict in the method of enforcement." As explained, both Congress and Texas address the transportation of illegal aliens. While federal law sets criminal penalties, Texas is merely rerouting such vehicles back to the border or impounding the driver's vehicle. Thus, there is no obstacle preemption when Texas enforces GA-37 against private individuals transporting groups of illegal aliens through the state.

Furthermore, GA-37 is a public health law, intended to stop the spread of disease, an objective the federal government is also pursuing. Similarly to GA-37, the order of the Centers for Disease Control ("CDC") under Title 42 Order explained that "a suspension of the right to introduce such persons . . . is required in the interest of public health." 42 U.S.C. § 265; 86 Fed. Reg. 38717. Congress also imposed an obligation on the federal government to ensure potentially sick aliens are not permitted entry. *See*, 8 U.S.C. § 1182(a)(1)(A)(i) ("any alien who is determined

. . . to have a communicable disease of public health significance is inadmissible."); 8 U.S.C. § 1222(a) (requiring that "aliens shall be detained for a sufficient time to enable the immigration officers and medical officers to . . . determine whether or not they" are infected with a covered disease such as COVID-19).

It is alleged that Texas's priorities conflict with those of the administration. But any conflict between state and federal discretionary enforcement priorities is not a conflict in the law. The Supreme Court has made clear that executive enforcement goals of a particular administration are not the same as statutory enforcement methods or techniques considered in preemption analysis. In other words, the administration's goals are not the same as Congress's "clear and manifest purpose." *Rice*, 331 U.S. at 230. In fact, the Supreme Court unanimously rejected the theory of implied preemption based on executive enforcement priorities in *Arizona*. There, the Court unanimously found that Arizona's "show your papers" law, which required state officials to ascertain the immigration status of certain arrestees, was not impliedly preempted because there had been no showing that it "create[d] a conflict with federal *law*." *Arizona*, 567 U.S. at 415 (emphasis added). Justice Alito, in his concurring opinion, explained:

> The United States suggests that a state law may be pre-empted, not because it conflicts with a federal statute or regulation, but because it is inconsistent with a federal agency's current enforcement priorities. Those priorities, however, are not law. They are nothing more than agency policy. I am aware of no decision of this Court recognizing that mere policy can have pre-emptive force. . . . If § 2(B) were pre-empted at the present time because it is out of sync with the Federal Government's current priorities, would it be unpre-empted at some time in the future if the agency's priorities changed?

*Id*. at 445 (internal citations omitted). The same is true here. Even though the administration wishes to reduce compliance with federal law with respect to illegal aliens, and thus made non-

enforcing of the INA a priority, that alone does not preempt states from pursuing the ignored congressional objectives by enforcing their own public health laws.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary injunction should be denied.

Dated: October 15, 2021                                Respectfully submitted,

                                                          /s/ Gina M. D'Andrea
                                         Admitted *Pro Hac Vice*

                                         Gina M. D'Andrea
                                         Immigration Reform Law Institute
                                         25 Massachusetts Ave NW, Suite 335
                                         Washington, DC 20001
                                         (202) 232-5590
                                         gdandrea@irli.org

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of October 2021, I electronically filed the foregoing *amicus curiae* brief with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                 /s/ Gina M. D'Andrea