UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>THE STATE OF TEXAS; GREG ABBOTT, in his official capacity as Governor of Texas,<br><br>  Defendants. | § § § § § § § § § § § § | Case No. 3:21-cv-173-KC (Consolidated) |
| ANNUNCIATION HOUSE; ANGRY TIAS & ABUELAS OF THE RIO GRANDE VALLEY; JENNIFER HARBURY; FIEL HOUSTON,<br><br>  Consolidated Plaintiffs,<br><br>v.<br><br>GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; STEVEN MCCRAW, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY,<br><br>  Consolidated Defendants. | § § § § § § § § § § § § § § § § § | Case No. 3:21-cv-00178-KC |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS DKT. #1**

Without a valid cause of action, the Federal Government lacks authority to pass judgment on Texas's response to COVID-19. The Federal Government's Response serves merely to highlight the flaws in its pleading as outlined in Defendants' Motion to Dismiss. The Federal

Government lacks standing, and the Supremacy Clause does not provide a valid cause of action. These deficiencies alone are fatal to Plaintiff's claims, and the Federal Government's preemption and intergovernmental immunity claims similarly fall short.

### I. THE FEDERAL GOVERNMENT'S CLAIMS MUST BE DISMISSED BECAUSE THE FEDERAL GOVERNMENT LACKS STANDING.

**A.     The Federal Government lacks standing to bring these claims against the Governor.**

In its Response, the Federal Government makes a half-hearted attempt to substantiate its standing against the Governor. It offers the tautological argument that this Court can issue an injunction that "would render moot Texas's contentions about the Governor's lack of authority to enforce the Executive Order." *See* Dkt. #75 at 6. Put differently, the Federal Government would have this Court circumvent any analysis of standing and simply enjoin the entire State of Texas, thereby providing the Federal Government with relief against the Governor. *See id.* But without standing to bring claims against the Governor, this Court lacks jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The Governor does not have statutory authority to enforce GA-37. *See* Dkt. #1 at 17. Accordingly, an injunction against the Governor would not only be improper, but ineffective.[1] The Fifth Circuit has held that plaintiffs lack standing against the Governor when challenging executive orders. *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) ("Because the plaintiffs have pointed to nothing that outlines a relevant enforcement role for Governor Abbott, the plaintiffs' injuries likely cannot be fairly traced to him."); *see also In re Abbott*, 601 S.W.3d 802, 812

---

[1] Although the Governor issued GA-37 by means of his emergency powers, the statutory authority on which GA-37 was based does not grant the Governor a corresponding power to enforce the contents of his order. *See* TEX. GOV'T CODE §§ 418.012, 418.018(c).

*Reply in Support of Dkt. #67*                                                                                              2

(Tex. 2020) (per curiam) ("Rather than threaten prosecution, the State in its briefing disclaims any intention by the Governor or the Attorney General to affirmatively enforce GA-13" and thus the plaintiffs lacked standing against the Governor.). This is because the statutory authority under the Texas Disaster Act "to issue, amend or rescind an Executive Order is not the power to enforce it." *Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020) (internal quotes omitted). The clear precedent from the Fifth Circuit on this issue forecloses the Federal Government's argument that the Governor's power to rescind his executive order is the legal equivalent of enforcement. Dkt. #75 at 6. To have standing, plaintiffs must sue state officials with "'some connection' to the state law's enforcement." *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 517 (5th Cir. 2017). Because the Federal Government has failed to sue a defendant with some enforcement role with respect to GA-37, the Court should dismiss the claims against the Governor for lack of standing.

**B.    The Federal Government lacks standing against the State of Texas because an injunction against the State of Texas will not redress any of its purported injuries.**

The Federal Government's pleading deficiency as to the Governor is inseparable from its lack of standing against the State of Texas. In its Response, the Federal Government does not contest (or even address) Supreme Court authority requiring injunctions to run against "the conduct of a particular actor." *Nken v. Holder*, 556 U.S. 418, 428 (2009). Instead, the Federal Government suggests that a blanket injunction against the State of Texas resolves its standing deficiencies. *See* Dkt. #76 at 6. But the vagueness and breadth of such an order makes monitoring compliance fraught with difficulties. The Federal Government correctly notes that an injunction against the State of Texas has been in effect for multiple months. *See* Dkt. #52. And while the undersigned counsel is unaware of any violation of the Court's injunction, the scope of such an injunction renders it difficult to monitor compliance—particularly when "the State of Texas"

includes everyone from the local school district to the state judiciary. "Equitable remedies, like remedies in general, are meant to redress injuries sustained *by a particular plaintiff* in a *particular lawsuit.*" *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) (emphasis added). As such, "the routine issuance of universal injunctions is patently unworkable, sowing chaos for litigants, the government, courts, and all those affected by these conflicting decisions." *Id.*

Given the practical concerns of counsel and the Federal Government's concession that it is willing to amend its complaint to name the proper party, it is appropriate for the Court to dismiss the claims against the State of Texas. *See* Dkt. #75 at 6.

## II. THE FEDERAL GOVERNMENT FAILS TO STATE A CLAIM.

**A.   The Federal Government's claims should be dismissed because it lacks a cognizable cause of action.**

The Federal Government's Complaint includes two claims, both explicitly brought as causes of action under the Supremacy Clause. Dkt. #1 at 10–11. In its Response, the Federal Government confirms its claims are brought under the Supremacy Clause. *See* Dkt. #75 at 6, 8, 17. The Supreme Court has made clear that the Supremacy Clause only provides "a rule of decision," not a cause of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015). And the Federal Government cannot alchemize a cause of action out of the Supremacy Clause.

The Federal Government attempts to limit the Court's holding in *Armstrong* to parties bringing "private right[s] of action." *See* Dkt. #75 at 7. In support of this interpretation of the Supreme Court's holding, the Federal Government cites a single footnote in a Tenth Circuit case. *See* Dkt. #75 at 7 (citing *United States v. S. Ct. of N.M.*, 839 F.3d 888, 906 n.9 (10th Cir. 2016)).

But the Supreme Court's opinion was not so limited, and the Federal Government offers no binding authority in support of its interpretation. *See generally* Dkt. #75.

Indeed, even if the Federal Government were correct and the *Armstrong* case is limited to only those suits brought by private parties, the Court's holding in *Armstrong* did not create a right of action for the Federal Government. In other words, the holding of *Armstrong* explicitly barring a private right of action under the Supremacy Clause should not be imaginatively inferred to create a basis for the instant lawsuit. To suggest that a holding that a private cause of action does *not* exist means that a proverbial "public" cause of action *does* exist turns the Supreme Court's holding on its head. Courts recognize, for example, that the Judicial Code of Conduct "does not create a private cause of action." *See, e.g.*, *Church of Scientology Int'l v. Kolts*, 846 F. Supp. 873, 881–82 (C.D. Cal. 1994). Neither does Federal Rule of Civil Procedure 11. *Port Drum Co. v. Umphrey*, 852 F.2d 148, 148–49 (5th Cir. 1998). Does that mean that the Federal Government can sue someone under the Judicial Code of Conduct or Rule 11 as its cause of action because, after all, no private cause of action exists?

The Federal Government asks this court to take an extraordinary leap with its conclusion that "*Armstrong* actually supports a cause of action for the Federal Government under the Supremacy Clause," *see* Dkt. #75 at 8, particularly when the Supreme Court held that the Supremacy Clause "instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Armstrong*, 575 U.S. at 325. The Court further noted that when it has allowed suits "to enjoin unconstitutional actions by state and federal officers," those cases have not been brought as claims under the Supremacy Clause. *Id.* at 327.

Indeed, the paucity of support the Federal Government offers for its position is reinforced by the Federal Government's quiet footnote stipulating that it may amend its complaint "to invoke a cause of action in equity." *See* Dkt. #75 at 8 n.4. The Federal Government has not brought an equitable cause of action here; it has brought claims under the Supremacy Clause. Indeed, there is no equitable cause of action for the Federal Government to pursue.[2] No precedent "hold[s] that considerations of federal supremacy can create a cause of action where none exists under state law or otherwise." *United States v. Hartford Acc. & Indem. Co.*, 460 F.2d 17, 19 (9th Cir. 1972) (affirming judgment against the federal government). And Congress agrees: It has repeatedly rejected requests "to grant the Executive general injunctive powers," which "not only demonstrates explicit congressional intent not to create the power claimed here by the [Federal Government] but also reveals an understanding . . . that no such power exist[s]." *United States v. City of Philadelphia*, 644 F.2d 187, 195 (3d Cir. 1980). The Court should not override "congressional policy denying the federal government broad authority to initiate an action whenever a civil rights violation is alleged." *United States v. Mattson*, 600 F.2d 1295, 1299–1300 (9th Cir. 1979).[3]

---

[2] Moreover, this cannot be cured by styling the suit as a "Violation of Intergovernmental Immunity." *See* Dkt. #1 at 1. As intergovernmental immunity arises from the Supremacy Clause, they are functionally synonymous. *See North Dakota v. United States*, 495 U.S. 423, 434–36 (1990) (plurality op.).

[3] The Federal Government only last month disclaimed "a broad authority to bring a suit" in equity "whenever they think a state law affecting private people is unconstitutional[.]" *United States v. Texas*, 21-588, Oral Argt. Tr. at 29:14–30:20 (U.S. Nov. 1, 2021), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2021/21-588_m648.pdf (last visited Dec. 6, 2021). This is yet another example of the Federal Government's habit of claiming that its suits are "exceptional," which is why courts have developed a habit of rejecting its claims to an unbounded power to sue. *See City of Philadelphia*, 644 F.2d at 201.

Finally, while the Supreme Court has permitted federal courts "in some circumstances [to] grant injunctive relief against state officers who are violating, or planning to violate, federal law," here, the State of Texas as a sovereign is not a "state officer[] . . . violating, or planning to violate, federal law." *See Armstrong*, 575 U.S. at 326. For this reason, and the reasons listed in Section I.B *supra*, the Court should dismiss Plaintiff's claims.

**B.       Federal law does not preempt GA-37.**

As recently as last month, the Fifth Circuit confirmed that Texas has a "constitutionally reserved police power over public health." *BST Holdings, L.L.C. v. Occupational Safety & Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021). Here, the Governor issued GA-37 with the express purpose of protecting public health in the midst of a pandemic. *See* Dkt. #1-2 at 16–17. And it is well-established that the Supreme Court provides an assumption against preemption "with particular force . . . in a field traditionally occupied by the States." *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008). This presumption undoubtedly applies here with the ongoing and imminent threat of a public health disaster for counties and agencies in the State of Texas. *See* Dkt. #1 at 16.

The Federal Government does not contest that GA-37 serves a public health purpose. GA-37 was issued under the authority of the Texas Disaster Act, authorizing the Governor to "control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area." TEX. GOV'T CODE § 418.018(c); Dkt. #1 at 17. And the Federal Government does not dispute that groups of people traveling together necessarily results in a higher risk of COVID-19 transmission than a person traveling alone. GA-37 itself cites COVID-19 cases that have been traced to the transportation of groups of migrants. Dkt. #1 at 16.

Moreover, the Federal Government has brought a pre-enforcement facial challenge to GA-37, and to succeed on this theory, the federal government must show that *every* application of GA-37 would stand as an obstacle to federal immigration law. *See Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995). The Federal Government has not pled that Texas DPS could not enforce GA-37 against private parties who, of their own volition, provide transportation to a group of migrants who have been detained by CBP for crossing the border illegally and then evade federal custody. Nor does the Federal Government dispute that Texas DPS could enforce GA-37 against private parties who assist migrants infected with COVID-19 to evade federal custody by providing them with ground transportation and ferrying them throughout Texas. *Compare* Dkt. #67 at 10, *with* Dkt. #75.

Accordingly, the Federal Government has not pled facts sufficient to support the reasonable inference that "no set of circumstances exists" under which GA-37 is lawful, and Plaintiff's preemption claim should be dismissed. *Barnes v. Mississippi*, 992 F.2d 1335, 1342 (5th Cir. 1993); *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016).

**C.     GA-37 does not infringe on intergovernmental immunity.**

GA-37 does not "regulate[] the Federal Government directly," nor does it "discriminate against the Federal Government or those with whom it deals." *North Dakota*, 495 U.S. at 436–37. GA-37 does not impose elevated standards on federal contractors and projects as California did in *Boeing Corp. v. Movassaghi*, 768 F.3d 832, 839–40 (9th Cir. 2014) (enjoining state statute that did so). Moreover, after the Ninth Circuit decided *Boeing*, the same court issued an opinion explaining that the Supreme Court has "clarified that a state 'does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats

them.'" *United States v. California*, 921 F.3d 865, 881 (9th Cir. 2019) (quoting *Washington v. United States*, 460 U.S. 536, 544–45 (1983)). The Federal Government does not contest that GA-37 applies to all non-law-enforcement officials and private actors.

The Federal Government's reliance on *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996), is similarly inapposite. That case involved California's attempts to impose penalties on the Federal Government for maintaining structures in a national park that failed to comply with California safety codes. *Id.* GA-37 does not regulate activities on federal property or impose penalties on the Federal Government. GA-37 applies uniformly—which the Federal Government does not dispute. *See generally* Dkt. #75.

That leaves only the Federal Government's contention that even a generally applicable law might as a practical matter operate as a direct regulation of federal activities. Dkt. #75 at 19. Yet the Federal Government does not seek to enjoin enforcement of GA-37 against federal employees or contractors in practice; rather, it seeks "injunctions against . . . enforcing the executive order" in general. Dkt. #1 at 12. But as described in Section II.B, its arguments regarding its own employees and contractors cannot support such a claim.

For these reasons, Federal Government's intergovernmental immunity claim should be dismissed.

## Conclusion

While Defendants are cognizant of this Court's preliminary injunction ruling, the issues of standing remain dispositive, and the Federal Government cannot create a cause of action out of the Supremacy Clause. If the Federal Government wishes to amend or replead, as it has suggested

is appropriate, it can seek leave to do so. *See* Dkt. #75 at 6 n.3, 8 n.4. For these reasons, Governor Abbott and the State of Texas respectfully request the Court grant their Motion to Dismiss.

Dated: December 6, 2021

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**THOMAS A. ALBRIGHT**
Chief, General Litigation Division

*/s/ Amy S. Hilton*
**AMY S. HILTON**
Assistant Attorney General
Texas State Bar No. 24097834
amy.hilton@oag.texas.gov

**WILLIAM D. WASSDORF**
Assistant Attorney General
Texas State Bar No. 24103022
william.wassdorf@oag.texas.gov

**DANIEL ABRAHAMSON**
Assistant Attorney General
Texas State Bar No. 24082598
daniel.abrahamson@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I certify that on December 6, 2021 the foregoing document was filed via the Court's CM/ECF system, causing electronic service upon all counsel of record

>*/s/ Amy S. Hilton*
>**AMY S. HILTON**
>Assistant Attorney General