# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § § § § § | |
| Plaintiff, | § § § | |
| v. | § § § | **CAUSE NO. EP-21-CV-173-KC** |
| **THE STATE OF TEXAS and GREG ABBOTT, in his official capacity as Governor of the State of Texas,** | § § § § § § § § | |
| Defendants. | | |
| **ANNUNCIATION HOUSE; ANGRY TIAS & ABUELAS OF THE RIO GRANDE VALLEY; JENNIFER HARBURY; and FIEL HOUSTON,** | § § § § § § § | |
| Plaintiffs, | § § | **CAUSE NO. EP-21-CV-178-KC** |
| v. | § § | |
| **GREG ABBOTT, in his official capacity as Governor of the State of Texas; and STEVEN MCCRAW, in his official capacity as Director of the State of Texas Department of Public Safety,** | § § § § § § § § § | |
| Defendants. | | |

1

**ORDER**

On this day, the Court considered Defendants State of Texas and Governor Greg Abbott's Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim, ECF No. 67. For the reasons discussed herein, Defendants' Motion is **DENIED**.

I.     **BACKGROUND**

On July 28, 2021, Governor Greg Abbott issued Executive Order No. GA-37, titled "Relating to the transportation of migrants during the COVID-19 disaster" ("GA-37" or "EO"). Tex. Exec. Order No. GA-37 (July 28, 2021), https://gov.texas.gov/uploads/files/press/EO-GA-37_transportation_of_migrants_during_COVID_IMAGE_07-28-2021.pdf; *see* Compl. ¶ 23, ECF No. 1. GA-37 mandates that "[n]o person, other than a federal, state, or local law enforcement official, shall provide ground transportation to a group of migrants who have been detained by [United States Customs and Border Patrol ("CBP")] for crossing the border illegally or who would have been subject to expulsion under the Title 42 order." EO ¶ 1; Compl. ¶ 24. GA-37 directs the Texas Department of Public Safety ("DPS") to "stop any vehicle upon reasonable suspicion of a violation of paragraph 1, and to reroute such a vehicle back to its point of origin or a port of entry if a violation is confirmed." EO ¶ 2; Compl. ¶ 24. GA-37 further authorizes DPS to impound any vehicle "being used to transport

migrants in violation of paragraph 1, or that refuses to be rerouted in violation of paragraph 2." EO ¶ 3; Compl. ¶ 24.

On July 30, 2021, the United States filed this action against the State of Texas and Governor Abbott in his official capacity as governor of Texas, asserting that GA-37 violates the Supremacy Clause and seeking to enjoin enforcement of GA-37. Compl. In its Complaint, the United States claims that GA-37 is preempted as an obstacle to federal immigration law because it authorizes state officials to make and act on federal immigration determinations and interferes with the federal government's ability to release and transport noncitizens. Compl. ¶¶ 33–37. The United States also claims that GA-37 violates the intergovernmental immunity component of the Supremacy Clause because it purports to directly regulate federal officials and contractors engaged in their official duties. Compl. ¶¶ 38–41.

The United States immediately filed its Emergency Motion for a Temporary Restraining Order or Preliminary Injunction. ECF No. 3. On August 26, 2021, the Court granted a preliminary injunction, ordering that "Defendants, their agents, officers, and employees, and all other persons and entities in active concert or participation with them are enjoined from taking any action to enforce the

executive order."[1]  Prelim. Inj. Order, ECF No. 52 at 18.  That injunction remains in force.

On October 11, 2021, Defendants filed their Motion to Dismiss, arguing that the United States' claim must be dismissed for lack of subject matter jurisdiction and for failure to state a claim.  Mot. 3–12.  The United States filed its Response in Opposition on November 8, 2021.  ECF No. 75.  On December 6, 2021, Defendants filed their Reply.  ECF No. 78.

## II.   DISCUSSION

### A.   Standards

Federal courts are courts of limited jurisdiction.  *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005); *People's Nat'l Bank v. Off. of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004).  Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims.  *Exxon Mobil*, 545 U.S. at 552; *People's Nat'l Bank*, 362 F.3d at 336.  A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  Fed. R. Civ. P. 12(b)(1).

A federal court must consider a motion to dismiss pursuant to Rule 12(b)(1) before any other challenge because a court must have subject matter jurisdiction

---

[1] On the same day, the Court consolidated *United States v. Texas*, 3:21-CV-173-KC, and *Annunciation House v. Abbott*, 3:21-CV-178-KC.  ECF No. 51.

before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). The party asserting jurisdiction constantly bears the burden of proof that the jurisdiction does in fact exist. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Where the motion to dismiss is based on the complaint alone, the court must decide whether the allegations in the complaint sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *Colony Ins. Co.*, 647 F.3d at 252. Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

  **B.**  **Analysis**

In their Motion, Defendants first argue that the United States lacks standing to sue both the State of Texas and Governor Abbott, and thus the Court must dismiss this case for lack of jurisdiction. Mot. 3–5. Defendants then argue that the United States has failed to state a claim because it lacks a cause of action under the Supremacy Clause. Mot. 6–7. Next, Defendants argue that GA-37 is not preempted by federal law because its object is public health, an area of traditional state authority, and that the United States has failed to allege that GA-37 is facially preempted in any event. Mot. 7–10. With respect to intergovernmental immunity, Defendants argue that GA-37 does not violate the doctrine because it does not

directly regulate federal actors, and that this theory fails to support facial relief. Mot. 11–12. The Court considers each argument in turn, beginning with the threshold issue of standing.

### 1. Standing

Defendants argue that the United States lacks standing because its injuries are not traceable to either Governor Abbott or the State of Texas, nor can they be redressed by an injunction against either Defendant. Mot. 3–5. Article III of the United States Constitution restricts a court's jurisdiction to the decision of "cases" or "controversies." U.S. Const. art III; *see Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997). Standing is an essential part of the case or controversy requirement in Article III. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008). "Article III standing requires plaintiffs to demonstrate that they have suffered an 'injury in fact' that is 'fairly traceable' to the defendant's actions and will 'likely . . . be redressed by a favorable decision.'" *Three Expo Events, LLC v. City of Dallas*, 907 F.3d 333, 341 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "'[W]hen standing is challenged on the basis of the pleadings,' [the Court] must 'accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party.'" *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Pennel v. City of San Jose*, 485 U.S. 1, 7 (1988)).

### a. State of Texas

Defendants argue that the United States lacks standing to sue Texas because its injuries cannot be traced to the state, nor can they be redressed by an injunction against it. Mot. 5. In their Motion, Defendants argue that any injunction in this case must "specify which [particular] Texas officials are supposed to refrain from enforcing [GA-37]" and cannot apply to the state as an entity. Mot. 5. But as the United States points out, courts commonly enjoin states and their governors from enforcing unconstitutional laws or otherwise entertain suits in which the United States seeks an injunction against a state—without questioning whether the injunction is proper. *See, e.g.*, *United States v. Arizona*, 703 F. Supp. 2d 980, 1008 (D. Ariz. 2010) (preliminarily enjoining the State of Arizona and its governor from enforcing the challenged law); *Arizona v. United States*, 567 U.S. 387, 416 (2012) (affirming in part and reversing in part the grant of a preliminary injunction against Arizona and its governor); *United States v. California*, 921 F.3d 865, 894 (9th Cir. 2019) (affirming in part and reversing in part the denial of a preliminary injunction against the State of California and its governor and attorney general to prevent enforcement of a state law); *United States v. South Carolina*, 840 F. Supp. 2d 898, 926–27 (D.S.C. 2011) (preliminarily enjoining the State of South Carolina from enforcing certain provisions of challenged law), *modified in part*, 906 F. Supp. 2d 463 (D.S.C. 2012), *aff'd*, 720 F.3d 518 (4th Cir. 2013); *United States v. Alabama*,

443 F. App'x 411, 420 (11th Cir. 2011) (per curiam) (considering injunction pending appeal that would prevent the State of Alabama from enforcing challenged provisions of state law). Defendants cite no authority that casts doubt on this practice, and the Court will not question it here.

Moreover, Defendants' "practical concerns" that a "universal" injunction would not effectively redress the United States' injuries ring hollow. *See* Reply 3–4. Defendants argue that the broad scope of an injunction against the State of Texas would "render[] it difficult to monitor compliance." Reply 3. But GA-37 itself authorizes just one agency with directly enforcing GA-37—DPS. EO ¶¶ 2–3. As such, the Court trusts that Texas officials will be able to modify directives to DPS or whatever other actions would prove necessary to ensure compliance with any permanent injunction the Court may issue in this case. Indeed, a preliminary injunction against "Defendants, their agents, officers, and employees, and all other persons and entities in active concert or participation with them" has been in effect since August 26, 2021, and Defendants concede that they are "unaware of any violation" of that injunction. Reply 3. As such, Defendants' argument that the United States lacks standing to sue the State of Texas fails.

      b.      **Governor Abbott**

Relatedly, Defendants argue that Governor Abbott has no power to enforce GA-37, so the United States' injuries cannot be traced to him and an injunction

against him will not redress those injuries. Mot. 3–4. It is a "long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of [law]." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001). Unless the defendant official has the authority to enforce the law at issue, any injury related to that law "cannot possibly be, *caused* by the[] defendant[]" nor can it be "redressed by the[] defendant[]." *Id.* at 427.

Defendants assert that Governor Abbott cannot enforce GA-37 because the statutory authority upon which GA-37 is based does not "grant the Governor a corresponding power to enforce [its] contents." Mot. 7 n.3 (citing Tex. Gov't Code Ann. §§ 418.012, 418.018(c) (West 2021)). Texas Government Code section 418.012, which authorizes the governor to issue executive orders during an emergency, does not explicitly authorize him to enforce them. However, the preamble to GA-37 also invokes section 418.011, which makes "the governor . . . responsible for meeting . . . the dangers to the state and people presented by disasters." EO 2 (citing Gov't Code § 418.011). The preamble also states that the Texas legislature has "expressly granted the governor broad authority to fulfill that responsibility [during an emergency]." EO 2. Furthermore, section 418.018(c), also cited in GA-37's preamble, explicitly allows the Governor to "control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area"—just what GA-37 purports to do. Gov't Code

§ 418.018(c).  Taken together, it is difficult to conclude that these statutory provisions do not imbue Governor Abbott with the authority to enforce GA-37.

Moreover, Governor Abbott appears to have sufficient control over the activities of DPS for the Court to conclude that he can direct the enforcement of GA-37 by that department.  As the head executive of the state, Governor Abbott appoints the commission that commands DPS.  *Id.* § 411.003.  The Texas Government Code also permits the Governor to "assume command and direct the activities of the commission and [DPS] during a public disaster . . . or to perform the governor's constitutional duty to enforce the law."  *Id.* § 411.012.  As such, the Court rejects Defendants' argument that Governor Abbott cannot enforce GA-37 and thus the United States lacks standing to sue him.[2]  Defendants' standing arguments fail.

## 2. Cause of Action under the Supremacy Clause

Next, Defendants argue, as they have previously, *see* Resp. Opp'n Mot. TRO 24–26, ECF No. 9, that the United States lacks a cause of action under the

---

[2] The cases cited by Defendants in which plaintiffs lacked standing to sue an official because the official could not enforce the law at issue are plainly distinguishable.  For example, in *Okpalobi*, the plaintiffs lacked standing to sue the Louisiana governor to challenge a tort statute that provided a *private* cause of action against doctors performing abortions but lacked a public enforcement provision.  *See* 244 F.3d. at 409.  The plaintiffs in *Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020), could not sue the governor to modify voting regulations because enforcement of those regulations was vested in county, rather than state, officials.  *See id.* at 468; *see also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 399–400 (5th Cir. 2020) (similar).  And in *California v. Texas*, 141 S. Ct. 2104 (2021), the challenged provision lacked any enforcement mechanism whatsoever.  *See id.* at 2114 (finding a lack of standing to challenge tax provision for which "the IRS c[ould] no longer seek a penalty from those who fail to comply").

Supremacy Clause because neither the constitutional provision itself nor a statute explicitly provides a cause of action. Mot. 6–7. For the reasons the Court has already noted, this argument fails. *See* Prelim. Inj. Order 13–14. In *Arizona v. United States*, 567 U.S. 387 (2012), the Supreme Court reviewed the United States' Supremacy Clause claim against the State of Arizona and found that certain provisions of the state's Support Our Law Enforcement and Safe Neighborhoods Act were preempted by federal immigration law—with no discussion of whether the federal government could even bring a claim. *Id.* at 416.

And despite Defendants' arguments to the contrary, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015), does not address the federal government's ability to bring suit under the Supremacy Clause; it holds only that the constitutional provision does not create a *private* cause of action. *Id.* at 324–26 (explaining that the Supremacy Clause does not "impos[e] mandatory private enforcement"). Moreover, to the Court's knowledge, the only court of appeals that has considered the argument that Defendants advance here flatly rejected it. *See United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906 n.9 (10th Cir. 2016) (rejecting defendants' argument that *Armstrong* "bars at the threshold the United States' preemption claim" because that case held only "that there is no private right of action under the Supremacy Clause").

The United States has brought many lawsuits invoking the Supremacy Clause in the years since *Armstrong* without courts questioning the existence of a cause of action. *See United States v. Washington*, 971 F.3d 856 (9th Cir. 2020), *as amended*, 994 F.3d 994 (9th Cir. 2020); *United States v. California*, 921 F.3d 865 (9th Cir. 2019); *United States v. Bd. of Cnty. Comm'rs of Otero*, 843 F.3d 1208 (10th Cir. 2016); *United States v. New Jersey*, No. 20-1364 (FLW) (TJB), 2021 WL 252270 (D.N.J. Jan. 26, 2021); *United States v. Kernen Constr.*, 349 F. Supp. 3d 988 (E.D. Cal. 2018); *U.S. Postal Serv. v. City of Berkeley*, No. C 16-04815 WHA, 2018 WL 2188853 (N.D. Cal. May 14, 2018). In light of "the general rule that the United States may sue to protect its interests," *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967), and the lack of authority precluding the United States from relying on the Supremacy Clause to do so, Defendants' argument that the United States lacks a cause of action in this case fails.

### 3. Federal preemption

Moving to Defendants' Supremacy Clause arguments, they first argue that GA-37 is not preempted because its object is public health, an area of traditional state authority. Mot. 7–9. The stated purpose of GA-37 is to improve "public health in Texas" and manage "a public health disaster." EO 1–2. But as this Court has explained, "[i]n assessing the impact of a state law on the federal scheme, [courts] have refused to rely solely on the legislature's professed purpose and have

looked as well to the effects of the law." Prelim. Inj. Order 9–10 (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 105 (1992). To consider only the law's stated purpose would be "at odds with the approach taken in nearly all [the Court's] Supremacy Clause cases" and "would enable state legislatures to nullify nearly all unwanted federal legislation" by identifying some other policy that may be furthered by the state law. *Perez v. Campbell*, 402 U.S. 637, 651–52 (1971). "[A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." *Id.* at 652.

The United States has alleged that GA-37 frustrates the full effectiveness of federal immigration laws by authorizing state officials to make and act on immigration determinations without federal direction. Compl. ¶¶ 24, 35–36. Under *Arizona*, state officials may not classify noncitizens according to immigration status without direction or supervision from the federal government. 567 U.S. at 409 ("By authorizing state officers to decide whether an alien should be detained for being removable, [the provision] violates the principle that the removal process is entrusted to the discretion of the Federal Government."); *see* Prelim. Inj. Order 6–10. Because "[t]he federal government alone . . . has the power to classify non-citizens," state law may not put state officials "in the impermissible position of [punishing] persons based on their immigration status

14

without federal direction and supervision." *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 534 (5th Cir. 2013).

GA-37 directs DPS to make and act on two immigration determinations that are reserved for the federal government. First, it directs DPS to determine whether a noncitizen has been "detained by CBP for crossing the border illegally," which turns on, apparently, whether the noncitizen has violated federal immigration law. EO ¶ 2. Second, it directs DPS to determine whether a noncitizen "would have been subject to expulsion under the Title 42 order." EO ¶ 2. The "Title 42 order," issued by the Centers for Disease Control and Prevention pursuant to Title U.S.C.§ 265, authorizes the expedited expulsion of "covered aliens." 86 Fed. Reg. 42,828 (August 2, 2021). Whether a noncitizen is covered depends on whether that person lacks valid documentation or entered the country unlawfully, among other immigration-related determinations. *See id.* 42,841. Because GA-37 requires DPS officials to classify noncitizens in this way, the United States has stated a claim that GA-37 violates the Supremacy Clause under *Arizona*.

What's more, GA-37 requires DPS officials to make these classifications every time it is enforced, so the United States has alleged that GA-37 is *facially* preempted. In their Motion, Defendants assert that the United States cannot establish that "'no set of circumstances exists' under which GA-37 is lawful" because Texas could lawfully enforce GA-37 against certain private parties. Mot.

15

10 (quoting *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016)). However, "[w]hat matters under *Arizona* is that the Order authorizes state officials to make and act on federal immigration determinations—not the identities of the parties that the Order is enforced against." Prelim. Inj. Mot. 12; *see Arizona*, 567 U.S. at 409; *see also Villas at Parkside Partners*, 726 F.3d at 534 (finding ordinance unconstitutional because it "puts local officials in the impermissible position of arresting and detaining persons based on their immigration status without federal direction and supervision"). Enforcement of GA-37 against anyone, even private parties, would violate the Supremacy Clause. As such, the United States has stated a claim that it is facially unconstitutional.

### 4. Intergovernmental immunity

Next, Defendants argue that GA-37 does not violate the intergovernmental immunity component of the Supremacy Clause because it does not directly regulate federal actors. Mot. 11–12. On this point, Defendants' Motion adds little to the arguments already rejected by this Court in its order granting a preliminary injunction. *See* Prelim. Inj. Order 12–13. Defendants assert that GA-37 does not regulate how federal employees conduct their duties or "mandate the ways in which any purported contractor . . . must perform services that the federal government hired it to perform." Mot. 11. However, GA-37 flatly bars anyone who is not a member of law enforcement—including non-law enforcement federal

officials and federal contractors—from transporting groups of noncitizens that fall into certain categories. EO ¶ 1. And the United States alleges that those federal officials and contractors must regularly transport the groups of noncitizens targeted by GA-37 as part of immigration operations. Compl. ¶¶ 15–22, 41. So GA-37 purports to directly regulate federal actors engaged in their official duties by dictating whether and how they can transport certain groups of noncitizens. Namely, they must do so by using law enforcement personnel or by transporting targeted noncitizens individually. By limiting the federal government's options in this way in the immigration realm, GA-37 impermissibly "regulates the United States directly," in violation of the intergovernmental immunity doctrine. *See North Dakota v. United States*, 495 U.S. 423, 436–37 (1990).

Finally, Defendants argue that the United States' intergovernmental immunity argument cannot support facial relief because it pertains only to the enforcement of GA-37 against federal officials and contractors. Reply 9 ("[The United States' intergovernmental immunity] arguments regarding its own employees and contractors cannot support [a facial] claim."). But because the Court has held that GA-37 is a facial violation of the Supremacy Clause under *Arizona*, the Court need not reach whether the United States' intergovernmental immunity argument would independently support facial relief.

## III.   CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss, ECF No. 67, is hereby **DENIED**.

**SO ORDERED.**

SIGNED this 17th day of February, 2022.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE