# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § § § § § § | |
| Plaintiff, | § § § | |
| v. | § § § | **CAUSE NO. EP-21-CV-173-KC** |
| **THE STATE OF TEXAS and GREG ABBOTT, in his official capacity as Governor of the State of Texas,** | § § § § § | |
| Defendants. | § § § | |
| | | |
| **ANNUNCIATION HOUSE; ANGRY TIAS & ABUELAS OF THE RIO GRANDE VALLEY; JENNIFER HARBURY; and FIEL HOUSTON,** | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | **CAUSE NO. EP-21-CV-178-KC** |
| **GREG ABBOTT, in his official capacity as Governor of the State of Texas; and STEVEN MCCRAW, in his official capacity as Director of the State of Texas Department of Public Safety,** | § § § § § § § § | |
| Defendants. | § § | |

## **ORDER**

On this day, the Court considered Defendants Governor Greg Abbott and Director of the

State of Texas Department of Public Safety Steven McCraw's Motion to Dismiss for lack of

1

subject matter jurisdiction and for failure to state a claim, ECF No. 68.  For the reasons discussed herein, Defendants' Motion is **GRANTED** in part, **DENIED** in part, and **HELD IN ABEYANCE** in part.

## I.     BACKGROUND[1]

This action concerns the constitutionality of Executive Order No. GA-37, titled "Relating to the transportation of migrants during the COVID-19 disaster" ("GA-37" or "EO"), issued by Governor Abbott on July 28, 2021.  Tex. Exec. Order No. GA-37 (July 28, 2021), https://gov.texas.gov/ uploads/files/press/EO-GA-37_transportation_of_migrants_during_COVID_IMAGE_07-28-2021.pdf.  GA-37 purports to limit the ability of individuals who are not involved in law enforcement from transporting certain groups of noncitizens.  Plaintiffs Annunciation House, Angry Tias and Abuelas of the Rio Grande Valley ("Angry Tias"), Jennifer Harbury, and FIEL Houston ("FIEL") regularly transport and provide services to noncitizens.  Compl. ¶¶ 15–18, ECF No. 57.  Plaintiffs challenge GA-37 as a facial violation of the Supremacy Clause and the Fourth Amendment to the United States Constitution.  Compl. ¶¶ 81–91.

### A.     Federal Immigration Regime and Plaintiffs' Operations

Noncitizens who enter the United States at a port of entry or another location at the border are often taken into custody by Customs and Border Patrol ("CBP").  Compl. ¶ 21.  Many are then released from custody and given instructions to check in with Immigration and Customs Enforcement ("ICE") or to appear before an immigration judge for removal proceedings at a later date.  Compl. ¶ 22.  Noncitizens who are released from CBP often travel to another location within the United States where they have family or other community to await removal

---

[1] All facts described in this section are taken as true from the allegations in Plaintiff's Complaint.  *See Arnold v. Williams*, 979 F.3d 262, 265 n.1 (5th Cir. 2020).

proceedings. Compl. ¶ 23. Prior to traveling to their final destination, many noncitizens stay near the border for a short period, often at a local shelter. Compl. ¶ 24. These shelters often transport groups of noncitizens to appointments and other engagements as well as to transit hubs such as bus stations and airports. Compl. ¶¶ 25–27.

Plaintiffs Annunciation House and Angry Tias are two such shelter providers that assist noncitizens after they are released from federal custody near the border. Compl. ¶¶ 15–16. Annunciation House is a nonprofit organization that provides shelter and other necessities to noncitizens in the El Paso area. Compl. ¶ 15. Annunciation House is one of the largest shelter networks in the border region, and CBP and ICE regularly drop off groups of noncitizens to Annunciation House shelters after releasing them from custody. Compl. ¶ 15. Annunciation House also contracts with a taxi company to transport noncitizens, in groups of approximately fifteen, to transit hubs where they depart for another destinations. Compl. ¶¶ 15, 25–27. Members of the organization also drive migrant families to local medical facilities for care. Compl. ¶ 24.

Angry Tias assists noncitizens in the Rio Grande Valley area by providing shelter, transportation, and legal assistance. Compl. ¶ 16. Like Annunciation House, Angry Tias contracts with a taxi company to transport groups of noncitizens to transit hubs. Compl. ¶ 16. Angry Tias members also drive groups of noncitizens to transit hubs and local appointments. Compl. ¶ 16.

Individual volunteers also provide shelter to recently released noncitizens near the border. Compl. ¶ 28. Plaintiff Jennifer Harbury is a retired attorney who regularly hosts noncitizens in her home and drives them to appointments and other activities. Compl. ¶¶ 17, 28. She recently hosted a mother and her child. Compl. ¶ 17.

Upon release from CBP custody, noncitizens may also need to drive themselves and other noncitizens to their places of employment, appointments, and other engagements. Plaintiff FIEL is an immigrant-led nonprofit organization that provides legal services to its approximately 11,000 members, at least 7,000 of whom are noncitizens and many of whom have noncitizen family members. Compl. ¶ 18. FIEL members drive to work and appointments and take their children to school. Compl. ¶ 74. FIEL also includes several immigrant families who may travel together to these engagements. Compl. ¶ 79.

B.   **Executive Order GA-37**

On July 28, 2021, Governor Abbott issued GA-37, titled "Relating to the transportation of migrants during the COVID-19 disaster." GA-37 mandates that "[n]o person, other than a federal, state, or local law enforcement official, shall provide ground transportation to a group of migrants who have been detained by CBP for crossing the border illegally or who would have been subject to expulsion under the Title 42 order." EO ¶ 1; Compl. ¶ 24. GA-37 directs the Texas Department of Public Safety ("DPS") to "stop any vehicle upon reasonable suspicion of a violation of paragraph 1, and to reroute such a vehicle back to its point of origin or a port of entry if a violation is confirmed." EO ¶ 2; Compl. ¶ 24. GA-37 further authorizes DPS to impound any vehicle "being used to transport migrants in violation of paragraph 1, or that refuses to be rerouted in violation of paragraph 2." EO ¶ 3; Compl. ¶ 24.

C.   **Procedural History**

On August 4, 2021, Plaintiffs filed this action against Governor Abbott and Director McCraw in their official capacities, claiming that GA-37 facially violates the Supremacy Clause and the Fourth Amendment and seeking to enjoin its enforcement. Plaintiffs claim that GA-37 is preempted as an obstacle to federal immigration law because it authorizes state officials to make

4

and act on federal immigration determinations. Compl. ¶¶ 81–84. Plaintiffs also claim that GA-37 violates the intergovernmental immunity component of the Supremacy Clause because it purports to directly regulate and discriminate against federal actors. Compl. ¶¶ 85–87. With respect to the Fourth Amendment, Plaintiffs assert that GA-37 is facially invalid because it requires DPS officers to seize individuals without valid justification in all circumstances of enforcement. Compl. ¶¶ 88–91.

On August 26, 2021, Plaintiffs' case was consolidated with *United States v. Texas*, 21-cv-173, in which the United States has sued the State of Texas and Governor Abbott, asserting that GA-37 is a facial violation of the Supremacy Clause and seeking an injunction against its enforcement. Order Granting Mot. Consolidate, ECF No. 51. The Court then granted the United States' Emergency Motion for a Temporary Restraining Order or Preliminary Injunction. Prelim. Inj. Order, ECF No. 52. The Court ordered that "Defendants, their agents, officers, and employees, and all other persons and entities in active concert or participation with them are enjoined from taking any action to enforce the executive order." Prelim. Inj. Order 18. That injunction remains in force.[2]

On October 11, 2021, Governor Abbott and Director McCraw filed their Motion to Dismiss, arguing that Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction and for failure to state a claim. Mot. Plaintiffs filed their Response in Opposition on November 8, 2021. ECF No. 76. On December 6, 2021, Defendants filed their Reply. ECF No. 79.

## II.   DISCUSSION

---

[2] Plaintiffs also filed a Motion for Preliminary Injunction in this case. ECF No. 58. Because Plaintiffs sought the same preliminary relief that the Court granted to the United States—a preliminary injunction of all enforcement of GA-37—the Court denied Plaintiff's Motion for a Preliminary Injunction as moot on January 12, 2022. ECF No. 81.

Defendants move to dismiss on the grounds that the Court lacks subject matter jurisdiction and that Plaintiffs have failed to state a claim. With respect to jurisdiction, Defendants argue that Plaintiffs lack standing and raise sovereign immunity as a bar to Plaintiffs' claims against Governor Abbott. Mot. 3–10. Defendants then argue that Plaintiffs lack a cause of action under the Supremacy Clause and that GA-37 does not violate the Supremacy Clause under either theory raised by Plaintiffs. Mot. 11–18. Finally, Defendants argue that enforcement of GA-37 would not violate the Fourth Amendment in every application, so Plaintiffs have failed to state a facial claim. Mot. 18–20. The Court turns first to jurisdiction.

### A. Subject-Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005); *People's Nat'l Bank v. Off. of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims. *Exxon Mobil*, 545 U.S. at 552; *People's Nat'l Bank*, 362 F.3d at 336. The party asserting jurisdiction constantly bears the burden of proof that the jurisdiction does in fact exist. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1). A federal court must consider a motion to dismiss pursuant to Rule 12(b)(1) before any other challenge because a court must have subject matter jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

With respect to jurisdiction, Defendants argue that Plaintiffs lack standing because they have not suffered an injury-in-fact as their alleged harms are not actual or imminent, Mot. 3–7, and relatedly, that it is speculative whether Director McCraw will enforce GA-37 in a manner

that infringes on their rights. Mot. 8–9. Next, Defendants argue that Plaintiffs lack standing to sue Governor Abbott because he is not authorized to enforce GA-37, so their harms are not traceable to him and an injunction against him will not redress those harms. Mot. 7–8. Defendants also raise sovereign immunity as a bar to Plaintiffs' claims against Governor Abbott, arguing that the *Ex Parte Young* exception to the doctrine does not apply in this case. Mot. 10–11.

    1.    **Standing**

Article III of the United States Constitution restricts a court's jurisdiction to the decision of "cases" or "controversies." U.S. Const. art III; *see Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997). Standing is an essential part of the case or controversy requirement. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008). "Article III standing requires plaintiffs to demonstrate that they have suffered an 'injury in fact' that is 'fairly traceable' to the defendant's actions and will 'likely . . . be redressed by a favorable decision.'" *Three Expo Events, LLC v. City of Dallas*, 907 F.3d 333, 341 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The doctrine "ensure[s] . . . the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).

"An association or organization can establish an injury-in-fact through either of two theories"—associational standing and organizational standing. *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). "Associational standing is derivative of the standing of the association's members, requiring that they have standing and that the interests the association seeks to protect be germane to its purpose." *Id.* Organizational standing arises when an "organization can establish standing in its own name [by] meet[ing] the same standing test that

applies to individuals." *Id.* Here, it appears to the Court that Annunciation House and Angry Tias assert associational and organizational standing, FIEL Houston asserts associational standing, and Jennifer Harbury asserts individual standing. Compl. ¶¶ 15–18, 74–80.

### a. Injury-in-fact

Defendants argue that Plaintiffs lack an injury-in-fact because they have not shown that their alleged harms are actual or imminent. Mot. 3–7. To satisfy Article III's injury-in-fact requirement, a plaintiff's alleged harm must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up)); *see also MedImmune v. Genentech*, 549 U.S. 118, 128–29 (2007) (explaining that a plaintiff need not "expose himself to liability before bringing suit to challenge the basis of [a] threat" of harm); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (noting that a plaintiff need not be subject to enforcement action to have standing). When a plaintiff "eliminate[s] the imminent threat of harm by simply not doing what he claimed the right to do," subject-matter jurisdiction is not precluded "because the threat-eliminating behavior [i]s effectively coerced." *MedImmune, Inc.*, 549 U.S. at 129. To establish standing based on future injury, a plaintiff must allege an "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [law], and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 158–59 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

### i. Course of conduct

Plaintiffs allege that each Plaintiff, or its members, intends to engage in a course of conduct arguably affected with a constitutional interest but proscribed by GA-37. *See Susan B. Anthony List*, 573 U.S. at 158. Plaintiffs, or their members, regularly engage in and intend to continue transporting groups of noncitizens. Plaintiffs provide specific examples of their activities: Annunciation House and its members personally transport and hire contractors to transport groups of migrants to transit hubs so they can travel to their families. Compl. ¶¶ 15, 27. Angry Tias also contracts with taxi companies to take groups of noncitizens to transit hubs, and its members also regularly drive groups of noncitizens to appointments and other locations. Compl. ¶ 16. As part of her volunteer efforts, Jennifer Harbury hosts noncitizens at her home and transports them to local appointments and other activities. Compl. ¶ 17. Harbury recently hosted a mother and her child, suggesting that she has transported and intends to continue to transport "groups" of noncitizens. Compl. ¶¶ 17, 78 (contemplating the possibility that Harbury's car will be impounded if GA-37 goes into effect). Finally, FIEL's members are immigrants, many of whom are noncitizens or who have family members who are noncitizens. Compl. ¶ 18. In their daily lives, FIEL members drive themselves and their noncitizen family members to school, appointments, and other locations. Compl. ¶ 74. Plaintiffs have described their intended courses of conduct in a sufficiently concrete manner. *See Lujan*, 504 U.S. at 564 (noting that plaintiffs must describe "concrete plans" and not merely "some day" intentions to establish standing").

          ii.     **Arguably affected with a constitutional interest**

With respect to whether that conduct is affected with a constitutional interest, the Court considers the two constitutional challenges raised by Plaintiffs separately. First, Plaintiffs invoke

the Supremacy Clause. Compl. ¶¶ 81–87. However, as the Supreme Court explained in *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015), the Supremacy Clause does not create a private right of action and, indeed, is "not the source of any federal rights." *Id.* at 324 (cleaned up). The provision lacks rights-creating language—it "instructs courts what to do when state and federal law clash[ ] but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* at 325. Plaintiffs have offered no explanation or authority supporting the position that their intended conduct is affected with a constitutional interest related to the Supremacy Clause. As always, Plaintiffs have the burden to establish standing. *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017). Because Plaintiffs have not met that burden here, the Court lacks jurisdiction over their Supremacy Clause claim for lack of standing.

But Plaintiffs also bring a Fourth Amendment challenge. Plaintiffs' intended conduct arguably implicates the right to be free from unreasonable seizures in several ways. *See* U.S. Const. amend. IV. GA-37 authorizes traffic stops, prolonged seizures in which drivers are directed to a port of entry, and impoundment of vehicles. EO ¶¶ 2–3. Traffic stops are Fourth Amendment seizures and must be justified by reasonable suspicion. *See United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). "Reasonable suspicion exists when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the seizure]." *United States v. Thomas*, 12 F.3d 1350, 1366 (5th Cir. 1994). An officer must be able to articulate more than an "inchoate and unparticularized suspicion" or "hunch" of unlawful activity. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Here, GA's-37's paragraph 2 authorizes DPS officers to pull over a vehicle if they have "reasonable suspicion" to believe the vehicle is transporting noncitizens who fall into one of the

10

categories targeted by GA-37.  EO ¶ 2.  Plaintiffs argue that finding such "reasonable suspicion" is a legally complex determination that requires information about passengers' immigration statuses that DPS officers could simply never access.  Resp. Opp'n 19; *see* Compl. ¶ 73 ("DPS officers have no clear way to determine whether [vehicle] passengers were arrested by CBP and why, or whether they could have fallen under the CDC's Title 42 Order but not its exceptions."). So, Plaintiffs argue, DPS officers would have to rely on "hunches, guesswork, and passengers' physical appearances" to decide which vehicles to stop, in violation of the Fourth Amendment. Resp. Opp'n 17; *see Wardlow*, 528 U.S. at 124 (explaining that a "hunch" of unlawful activity does not constitute reasonable suspicion").

GA-37 also authorizes DPS officers to make two other Fourth Amendment seizures—to reroute vehicles to a port of entry or impound the vehicle upon *confirmation* that its driver has violated paragraph 1.  EO ¶¶ 2–3.  This creates a problem similar to the one described above. Confirming a violation of paragraph 1 would require substantial information about the passengers' immigration statuses—which Plaintiffs allege that DPS officers could never obtain. Resp. Opp'n 17.  As such, those provisions authorizing rerouting and impounding vehicles upon "confirmation" of a paragraph 1 violation also implicate Fourth Amendment issues.  Plaintiffs' Fourth Amendment interest here is at least arguable.  *See Susan B. Anthony List*, 573 U.S. at 158–59; *see also Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 700 (8th Cir. 2021) (noting that "standing analysis and the substantive analysis are not coextensive" in pre-enforcement challenges).

### iii.     Arguably proscribed

Plaintiffs' intended conduct is also "arguably proscribed by the [executive order] they wish to challenge."  *See Susan B. Anthony List*, 573 U.S. at 162 (cleaned up).  In *Susan B.*

*Anthony List*, nonprofit groups that intended to make statements about candidates' voting records challenged an Ohio statute that prohibited making "false statements concerning the voting record of a candidate." *Id.* at 152–53. The Supreme Court found that the groups' intended conduct was arguably proscribed because the law "swe[pt] broadly" and "cover[ed] the subject matter of [the nonprofits'] intended speech." *Id.* at 162.

Similarly here, GA-37 covers the "subject matter" of Plaintiffs' intended conduct. GA-37 authorizes DPS officers to detain anyone if there is "reasonable suspicion" to believe they are transporting targeted noncitizens and to control and impound vehicles upon "confirmation" of such activity. EO ¶ 2. As discussed, Plaintiffs argue that DPS officers cannot actually find reasonable suspicion, let alone confirm, that a driver is transporting noncitizens targeted by GA-37. Resp. Opp'n 19; *see* Compl. ¶ 73. As such, GA-37 would, in effect, target *all* non-law enforcement persons who transport groups of noncitizens.[3] EO ¶¶ 2–3. Plaintiffs allege that they regularly, opening engage in this activity and intend to continue. Compl. ¶¶ 15–18, 24, 28. Therefore, their intended conduct is arguably proscribed by GA-37 if they wish to avoid unreasonable seizures.

### iv. Credible threat of prosecution

Finally, there exists a credible threat of prosecution in this case. *See Susan B. Anthony List*, 573 U.S. at 158–59. In pre-enforcement challenges, courts may find standing even when "the [law] had never been applied, [but] the government would not disavow prosecution if plaintiffs engaged in their intended course of action." *Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018) (citing *United Farm Workers*, 442 U.S. at 302). GA-37 has not yet been enforced

---

[3] Given the difficulty of determining whether a given individual is a citizen or not, GA-37 could cause DPS officers to target and detain vehicles transporting *any* group of people. However, Plaintiffs' specific conduct—transporting groups of noncitizens near the border—comes closer to GA-37's ambit, so Plaintiffs are at an increased risk of being targeted and detained.

against Plaintiffs, and in their Motion, Defendants suggest that DPS may simply enforce GA-37 in a manner that does not impact Plaintiffs or their operations. Mot. 6. But the Court finds no reason to surmise that Texas would not enforce GA-37 against Plaintiffs absent an injunction. Indeed, the Declaration of Director McCraw that Defendants submitted to the Court with their Response to Plaintiff's Motion for a Preliminary Injunction suggests that DPS intends to enforce GA-37 in some capacity. ECF No. 56-1 at 20 (stating that "DPS intends to draft procedures to govern enforcement of [GA-37]" and that McCraw had started connecting with partners to "create workable enforcement guidelines"). Plaintiffs regularly engage in the specific conduct targeted by GA-37 and intend to continue to do so. As such, Plaintiffs have alleged a credible threat that GA-37 will be enforced against them absent an injunction—which is currently in effect on a preliminary basis only. Plaintiffs have established an injury-in-fact sufficient to establish standing to bring their Fourth Amendment claim.

The Court also notes Defendants' related argument that Plaintiffs cannot sue Director McCraw because they have not established that he will direct DPS to enforce GA-37 in a manner that infringes on Plaintiffs' rights. Mot. 8–9. This argument adds little to the discussion above. As noted, Plaintiffs allege a particular and credible threat of enforcement against them because they regularly engage in the type of activities that GA-37 targets. *See* EO ¶¶ 1–2; Compl. ¶¶ 15–18, 88–91. The Court finds no reason to believe that Director McCraw will choose to enforce GA-37 in a manner that does not impact Plaintiffs. Defendants' argument fails.

### b. Standing to sue Governor Abbott

Next, Defendants argue that Plaintiffs lack standing to sue Governor Abbott because he cannot enforce GA-37, so Plaintiffs' injuries cannot be traced to him and an injunction against him will not redress those injuries. Mot. 7–8. It is a "long-standing rule that a plaintiff may not

sue a state official who is without any power to enforce the complained-of [law]." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001). Unless the defendant official has the authority to enforce the law at issue, any injury related to that law "cannot possibly be, *caused* by the[] defendant[]" nor can it be "redressed by the[] defendant[]." *Id.* at 427.

Defendants assert that Governor Abbott "plays no role in enforcing GA-37" and the statutory authority upon which GA-37 is based does not "grant the Governor a corresponding power to enforce" it. Mot. 7 n.3 (citing Tex. Gov't Code Ann. §§ 418.012, 418.018(c) (West 2021)). Texas Government Code section 418.012, which authorizes the governor to issue executive orders during a state emergency, does not explicitly authorize him to enforce those orders. Gov't § 418.012. However, the preamble to GA-37 also invokes section 418.011, which makes "the governor . . . responsible for meeting . . . the dangers to the state and people presented by disasters." EO 2 (citing Gov't Code § 418.011). The preamble also states that the Texas legislature has "expressly granted the governor broad authority to fulfill that responsibility [during an emergency]." EO 2. Furthermore, section 418.018(c), also cited in the preamble, explicitly allows the governor to "control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area"—just what GA-37 purports to do. Gov't Code § 418.018(c). Taken together, it is not difficult to conclude that these statutory provisions imbue Governor Abbott with the authority to enforce GA-37.

Moreover, Governor Abbott appears to have sufficient control over the activities of DPS for the Court to conclude that he can direct the enforcement of GA-37 by that department. The Texas Government Code permits the governor to "assume command and direct the activities of the commission and [DPS] during a public disaster . . . or to perform the governor's constitutional duty to enforce the law." *Id.* § 411.012. And as the head executive of the state,

14

Governor Abbott appoints the commission that commands DPS. *Id.* § 411.003. As such, the Court rejects Defendants' argument that Governor Abbott cannot enforce GA-37 and thus Plaintiffs lack standing to sue him.[4] Each of Defendants' standing arguments fail with respect to Plaintiffs' Fourth Amendment Claims.

### 2. Sovereign immunity

Relatedly, Defendants argue that Plaintiffs' claims against Governor Abbott are barred by sovereign immunity because the *Ex Parte Young* exception does not apply in this case. Mot 9–10. The Court rejects this argument for substantially the same reasons it rejects Defendants' standing argument with respect to Governor Abbott. Sovereign immunity, grounded in the Eleventh Amendment, bars private plaintiffs from suing states without their consent. *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). However, under the *Ex Parte Young* exception, plaintiffs may bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Ex Parte Young*, 209 U.S. 123, 155–56 (1908)). To be a proper defendant, the state official must have "some connection" to the law's enforcement. *Ex Parte Young*, 209 U.S. at 157. "The required connection is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the [law] in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014).

---

[44] The cases cited by Defendants in which plaintiffs lacked standing to sue an official because the official could not enforce the law at issue are plainly distinguishable. For example, in *Okpalobi*, the plaintiffs lacked standing to sue the Louisiana governor to challenge a tort statute that provided a *private* cause of action against doctors performing abortions but lacked a public enforcement provision. *See* 244 F.3d. at 409. The plaintiffs in *Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020), could not sue the governor to modify voting regulations because enforcement of those regulations was vested in county, rather than state, officials. *See id.* at 468; *see also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 399–400 (5th Cir. 2020) (similar). And in *California v. Texas*, 141 S. Ct. 2104 (2021), the challenged provision lacked any enforcement mechanism whatsoever. *See id.* at 2114 (finding a lack of standing to challenge tax provision for which "the IRS c[ould] no longer seek a penalty from those who fail to comply").

Defendants argue that Governor Abbott does not have the requisite connection to enforcement of GA-37. But as noted, the governor is authorized to "control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area," which is what GA-37 purports to do. Gov't Code § 418.018(c). GA-37 is also premised on the governor's disaster authority, EO 2, and state law authorizes the governor to "assume command and direct the activities of the commission and [DPS] during a public disaster." *Id.* § 411.012. And because Governor Abbott himself issued GA-37 as an executive order, it is difficult to conclude that he has not demonstrated a willingness to enforce it, and Defendants have made no arguments to the contrary. As such, the Court rejects Defendants' argument that sovereign immunity bars Plaintiffs' claims against Governor Abbott.

### B.     Sufficiency of the Complaint

Having established jurisdiction over Plaintiffs' Fourth Amendment claim, the Court turns to Defendants' challenge pursuant to Federal Rule of Civil Procedure 12(b)(6). In their Motion, Defendants argue that GA-37 does not violate the Fourth Amendment because, by its text, it authorizes seizures justified only by "reasonable suspicion" and, in any event, Plaintiffs facial challenge fails because they have not shown that enforcing GA-37 would be unconstitutional in every circumstance. Mot. 18–20. The Court declines to address these arguments at this time.

As noted, Plaintiffs' case has been consolidated with the United States' challenge to GA-37. Order Granting Mot. Consolidate. In its Complaint, the United States seeks a permanent injunction against all enforcement of GA-37, the same relief sought by Plaintiffs. United States Compl. 12, ECF No. 1. On August 26, 2021, the Court granted the United States' Emergency Motion for a Temporary Restraining Order or Preliminary Injunction in this case, enjoining all enforcement of GA-37 until the resolution of the United States' claims on the merits. Prelim.

Inj. Order 18–19. Therefore, the Court has already issued the preliminary relief sought by Plaintiffs such that GA-37 cannot be enforced against them at least until the resolution of the United States' claims. As such, the Court declines to rule on merits of Plaintiffs' remaining claim pending the resolution of the United States' claims in this case. Defendants' Motion is held in abeyance with respect to its argument that Plaintiffs have failed to state a claim.

## III. CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss, ECF No. 68, is hereby **GRANTED** in part, **DENIED** in part, and **HELD IN ABEYANCE** in part.

The Motion is **GRANTED** with respect to Defendants' argument that the Court lacks jurisdiction over Plaintiffs' Supremacy Clause claim. Plaintiffs' Supremacy Clause claim is **DISMISSED**.

The Motion is **DENIED** with respect to Defendants' argument that the Court lacks jurisdiction over Plaintiffs' Fourth Amendment claim.

The Motion is **HELD IN ABEYANCE** with respect to Defendants' merits arguments until the resolution of the United States' claims in this case. Because the Court declines to rule on Plaintiffs' Fourth Amendment claim at this time, discovery pertaining to that claim is hereby **STAYED**.

**SO ORDERED.**

SIGNED this 17th day of February, 2022.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE